LAUREL WOODS APARTMENTS v ROUMAYAH

Docket No. 269506. Submitted November 15, 2006, at Detroit. Decided
March 8, 2007, at 9:10 a.m.

Laurel Woods Apartments brought an action in the Oakland Circuit
Court against Najah and Rebecca Roumayah to recover money for
fire damage to an apartment the Roumayahs leased from the
plaintiff. The trial court, John James McDonald, J., granted the
defendants' motion for summary disposition in accordance with
the holding in *New Hampshire Ins Group v Labombard*, 155 Mich
App 369 (1986), under which a tenant who has not expressly
agreed to be liable for negligently caused fire damage may not be
held liable for such damage. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred in granting the defendants' motion for
summary disposition, because the parties to the lease agreement
contractually agreed that defendants were liable for any damage
they caused to the premises. The holding in *Labombard*, which
was a negligence action, does not apply to this case, which is an
action for breach of contract.

2. The statutory provision abolishing joint and several liability
does not preclude the parties from contractually agreeing that the
defendants would be jointly and severally liable for damage that
either of them caused.

Reversed and remanded for further proceedings.

BORRELLO, J., dissenting, would have affirmed the trial court's
grant of summary disposition in favor of Najah Roumayah and
remanded the case to the trial court to determine whether Rebecca
Roumayah caused the damage to the plaintiff's property. The lease
agreement did not contain an express and unequivocal agreement
by the defendants to be liable for negligently caused fire damage to
the premises, as *Labombard* required to impose liability, and to
circumvent 20 years of precedent when considering almost iden-
tical facts by labeling the action a contract claim rather than a tort
claim exalts form over substance. Further, the Legislature abol-
ished joint and several liability in cases where a plaintiff seeks to
recover for property damage in actions based on tort or another

legal theory, and the plaintiff here clearly seeks to recover for property damage to the apartment allegedly caused by the negligence of one of the defendants; accordingly, the defendants should be severally liable, not jointly liable.

1. LANDLORD AND TENANT — LEASES — LIABILITY FOR FIRE LOSS.

A tenant may be held contractually liable for fire damage under a lease agreement stating that the tenant shall be held liable for any damage to the premises.

2. CONTRACTS — JOINT AND SEVERAL LIABILITY — VALIDITY.

The statutory abolition of joint and several liability in tort actions does not preclude parties from contractually agreeing to be held jointly and severally liable for damages (MCL 600.2596).

*Marcus Evangelista, P.C.* (by *Marcus Evangelista*), for Laurel Woods Apartments.

*Gross, Nemeth & Silverman, P.L.C.* (by *Mary T. Nemeth*), for Rebecca Roumayah.

*Pedersen, Keenan, King, Wachsberg & Andrzejak, P.C.* (by *Eric A. Andrzejak*), for Najah Roumayah.

Before: WILDER, P.J., and KELLY and BORRELLO, JJ.

KELLY, J. In this breach of contract claim, plaintiff Laurel Woods Apartments appeals as of right an order granting summary disposition in favor of defendants Najah Roumayah and his niece, Rebecca Roumayah. We reverse and remand.

I. FACTS

This case arises from a kitchen fire in an apartment owned and operated by plaintiff and leased by defendants. Defendants signed a lease agreement that, in addition to listing Najah and Rebecca Roumayah "jointly severally" as "Tenant," and defining "Premises" as apartment 208, contained the following provision:

9. <u>Maintenance Repairs and Damage of Premises</u>. Tenant shall keep the Premises and all appliances in good condition and repair, and shall allow no waste of the Premises or any utilities. Tenant shall also be liable for any damage to the Premises or to Landlord's other property (i.e., other units, common facilities and equipment) that is caused by the acts or omissions of Tenant or Tenant's guests. Landlord shall perform all maintenance and repairs to the roof, walls and structural elements, all mechanical, plumbing and electrical systems at Landlord's cost and expense, unless such damage is caused by Tenant[']s acts or neglect, in which case such cost and expense incurred by Landlord shall be paid by Tenant.

After defendants moved into the apartment, a fire occurred in the kitchen that resulted in substantial damage to the premises. The firefighters' investigation revealed that the fire originated on top of the kitchen stove. The inspection report included a statement by Rebecca Roumayah that she was cooking, but thought she had turned off the stove. While she was in the other room talking on the phone, the kitchen lit up in flames. She attempted to call 911, but did not succeed until she was outside the building.

Plaintiff filed a complaint alleging that defendants caused damage to the premises and, pursuant to paragraph 9 of the lease agreement, are liable for those damages. Plaintiff alleged that defendants failed or refused to perform their contractual obligations and, therefore, breached the lease agreement. Plaintiff subsequently filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no question of fact regarding whether Rebecca Roumayah caused the fire and that, under the lease agreement, defendants were jointly and severally obligated to pay for any damage that they caused to the premises.

Defendants filed a countermotion for summary disposition pursuant to MCR 2.116(C)(8). Defendants first asserted that, in *New Hampshire Ins Group v Labombard,* 155 Mich App 369; 399 NW2d 527 (1986), this Court held that despite a contractual provision that the tenant agreed to "yield up" the premises "in like condition as when taken," there was no express agreement that the tenant would be liable to the landlord for fire damage, and the Court held that, absent such an agreement, the tenant could not be liable for negligently caused fire damage. Defendants contended that in this case, like in *Labombard,* there was no express agreement that they would be liable for fire damage. Defendants cited several portions of the lease agreement that, they argued, indicated that plaintiff carried fire insurance and that defendants were released from liability for any damage covered by such a policy. Defendants also asserted that Najah Roumayah could not be liable because there was no question of fact regarding whether he caused the fire, and joint and several liability was in violation of MCL 600.2956 and public policy. Defendants also asserted that while the evidence demonstrated that a fire caused the damage at issue, it was unclear whether Rebecca Roumayah caused the fire.

Plaintiff filed a reply brief in which it argued that all of defendants' arguments presumed that plaintiff's claim was a negligence claim, but it was solely a breach of contract claim. Accordingly, *Labombard* was inapplicable as was MCL 600.2956, which relates to torts. Plaintiff also asserted that there was "no doubt" that Rebecca Roumayah caused the fire.

At the motion hearing, the trial court asked whether there was any provision in the lease agreement that expressly required the tenant to maintain fire insur-

ance. Plaintiff's counsel answered that there was not. The trial court stated, "Then I'm going to grant [defendants'] motion. I think [*Labombard*] controls." The trial court entered an order denying plaintiff's motion for summary disposition and granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8).

II. ANALYSIS

Plaintiff first contends that the trial court erred in granting defendants' motion for summary disposition pursuant to *Labombard* when defendants were contractually liable for the damage caused to the premises. We agree.

The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) on the basis that plaintiff failed to state a claim on which relief may be granted. When an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint. MCR 2.113(F). Accordingly, the written contract becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8). *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). We review de novo a trial court's decision to grant or deny summary disposition pursuant to MCR 2.116(C)(8). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and allows consideration of only the pleadings. The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001) (citation omitted).

### A. LIABILITY FOR DAMAGE CAUSED BY TENANTS

The first question is whether defendants are *contractually* liable for the damage to the premises allegedly caused by Rebecca Roumayah.

The lease agreement designates the Roumayahs as "Tenant" and unit #208 as "Premises." It is undisputed that both parties signed the agreement. It provides:

> 9. <u>Maintenance Repairs and Damage of Premises</u>. Tenant shall keep the Premises and all appliances in good condition and repair, and shall allow no waste of the Premises or any utilities. *Tenant shall also be liable for any damage to the Premises* or to Landlord's other property (i.e., other units, common facilities and equipment) *that is caused by the acts or omissions of Tenant or Tenant's guests*. Landlord shall perform all maintenance and repairs to the roof, walls and structural elements, all mechanical, plumbing and electrical systems at Landlord's cost and expense, unless such damage is caused by Tenant['s] acts or neglect, in which case such cost and expense incurred by Landlord shall be paid by Tenant. [Emphasis added.]

Plaintiff asserts that the emphasized portion of this paragraph unambiguously provides that defendants are liable for damage Rebecca Roumayah caused to the premises. Defendants, to the contrary, claim that pursuant to *Labombard*, plaintiff cannot recover fire repair costs from defendants because the lease agreement did not contain an express agreement that they would be liable for negligently causing fire damage and because the lease agreement did not require defendants to insure the premises.

In *Labombard,* the building owner purchased insurance from the insurance company and, accordingly, the insurance company paid for damages arising from a fire caused by a tenant. *Labombard, supra* at 370. The insurance company and building owner sued the tenant

in tort, claiming that she was negligent in causing a fire on the premises. *Id.* at 371. The defendant filed a motion pursuant to MCR 2.116(C)(8) asserting that the contract "absolved her of liability for fire damages to the rental premises." *Id.* She also argued that, as a matter of law, a tenant is not liable for fire damage caused by his or her own negligence. *Id.* The *Labombard* Court first examined whether there was an express agreement that the defendant would be liable for fire damage resulting from the defendant's negligence. *Id.* at 373-374. Having found none, *id.* at 374, it reviewed the remainder of the contract in an attempt to discern what the parties had contemplated. The Court concluded that the "agreement clearly evidences the parties' mutual expectation that fire insurance would be obtained by the lessor." *Id.* at 376. Reading the contract as a whole, this Court concluded, "Nothing in the rental agreement suggests, however, that defendant agreed to be liable to the lessor, or his insurer, for the full amount of negligently caused fire damage." *Id.* Accordingly, this Court held that, "absent an express and unequivocal agreement by a tenant to be liable to the lessor or the lessor's fire insurer *in tort* for negligently caused fire damage to the premises, the tenant has no duty to the lessor or insurer which would support a *negligence* claim for such damages." (Emphasis added.)

*Labombard* does not apply to this case. *Labombard* was a negligence action, whereas this is a breach of contract action. The holding in *Labombard* makes plain that the Court was limiting negligence claims against tenants for fire damage to circumstances in which there is an express agreement allowing such liability. Thus, although the *Labombard* Court considered the parties' lease agreement, the holding in *Labombard* has no applicability here.

Rather, in deciding this breach of contract action, we follow the well-established rules of contract construction. Where the language of a contract is clear and unambiguous, construction of the contract is a question of law. *Meagher v Wayne State Univ*, 222 Mich App 700, 721; 565 NW2d 401 (1997). A contract is not ambiguous if it fairly admits of but one interpretation. *Id.* at 722. A court must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). However, if provisions of a contract irreconcilably conflict, the contractual language is ambiguous, and the ambiguous contractual language presents a question of fact to be decided by a jury. *Id.* at 467, 469.

The lease agreement in this case is clear and unambiguous. It states, "Tenant shall also be liable for any damage to the Premises . . . that is caused by the acts or omissions of Tenant or Tenant's guests." Accordingly, defendants, who are defined as "Tenant," are liable for "any damage" caused by their act or omission. Fire damage is clearly encompassed by the broad term "any damage." And defendants' liability is not limited to damage caused by their negligence, but rather, it extends to any damage that they cause, negligently or otherwise.

Defendants contend that, despite paragraph 9, paragraphs 13, 16, and 17[1] suggest that the parties agreed that plaintiff would insure the premises. These paragraphs provide, in relevant part, that defendant will

---

[1] 13. <u>Access to the Premises</u>. Tenant shall allow Landlord and Landlord's agents reasonable access to the Premises to inspect, repair, alter, or improve the Premises upon 24 hours prior notice. Tenant shall also allow insurance carriers and representatives, fire

allow insurance carriers to inspect the premises, that plaintiff and defendants "agree to release each other from any liability for loss, damage, or injury for which

---

department inspectors, police, or local health authorities to inspect the Premises to the extent permitted by law upon 24 hours prior notice.

\*   \*   \*

16. <u>Property Loss or Damage, And Insurance</u>. To the extent permitted by law, Landlord and Landlord's agents shall not be liable for any damage to or loss of Tenant's property that is caused by theft, fire, pipe bursts, flood, or other casualty on the Premises, carport, or storage room. Landlord recommends that Tenant obtain renter's insurance to protect Tenant's personal property against such loss or damage. . . . Landlord and Tenant agree to release each other from any liability for loss, damage or injury for which insurance is carried to the extent of any recovery under an insurance policy.

\*   \*   \*

17. <u>Damages or Destruction of Premises</u>. If casualty partially destroys the Premises but it can be restored to a tenantable condition prior to the expiration of the Lease Term, Landlord has the option to repair the Premises with reasonable dispatch; however, Landlord's obligation to repair the Premises shall be limited to the amount of insurance proceeds actually received by Landlord. Tenant's obligation to pay rent may be equitably abated during the period of restoration to the extent Tenant vacates the Premises (or portion thereof) and removes any personal property that would otherwise obstruct Landlord's access or delay the repairs to the damaged areas. If a casualty damages the Premises to the extent that it is reasonably anticipated that Tenant must totally vacate the Premises for a period in excess of two (2) weeks during which repairs would otherwise be made or if Landlord is unable or unwilling to repair the Premises, then Landlord may terminate this Lease by giving Tenant written notice within five (5) days after the casualty. Landlord shall not be liable for any reasonable delay or for providing housing for Tenant during repairs. Tenant shall not be responsible for any portion of fire or extended coverage insurance that Landlord may elect to maintain on the premises.

insurance is carried to the extent of any recovery under an insurance policy," and upon casualty, plaintiff's obligation to repair the premises "shall be limited to the amount of insurance proceeds actually received by [plaintiff]." However, in none of these provisions does plaintiff agree to insure the premises. Rather, these provisions are applicable *if* the premises are insured by either party. Nor does paragraph 9 irreconcilably conflict with paragraphs 13, 16, and 17. Rather, the parties agreed that defendants would be liable for any damage they caused to the premises and, if the premises were insured, both parties would be released from liability to the extent of any recovery under an insurance policy. To read the contract as defendants suggest would render paragraph 9 nugatory, which, considering that the provisions do not irreconcilably conflict, is impermissible. *Klapp, supra* at 467-469. Because the parties agreed that defendants would be liable for any damage they caused to the premises, the trial court erred in granting defendant's motion for summary disposition on the basis of *Labombard.*

### B. JOINT AND SEVERAL LIABILITY

Plaintiff also contends that defendants are jointly and severally liable for the alleged damages pursuant to the contract. This issue is not properly preserved for appellate review because the trial court did not address it. *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98; 494 NW2d 791 (1992). However, "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc,* 269 Mich

App 424, 427; 711 NW2d 421 (2006). We address this issue because it involves a question of law and the lower court record contains sufficient facts to resolve the issue.

Najah Roumayah contends that the trial court should have dismissed the claim against him because (1) pursuant to MCL 600.2956, he cannot be held jointly and severally liable and (2) there is no evidence that he caused the fire.

MCL 600.2956 provides:

> Except as provided in section 6304, in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint. However, this section does not abolish an employer's vicarious liability for an act or omission of the employer's employee.

Our Supreme Court noted in *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 472 Mich 44, 51; 693 NW2d 149 (2005), that the tort-reform legislation

> eliminated joint and several liability in certain tort actions, requir[ing] that the fact-finder in such actions allocate fault among all responsible tortfeasors, and provid[ing] that each tortfeasor need not pay damages in an amount greater than his allocated percentage of fault. As such, in an action in which an injured party has sued only one of multiple tortfeasors and in which [MCL 600.2956, 600.2957, and 600.6304] apply, the tortfeasor would have no need to seek contribution from other tortfeasors, either in that same action (by bringing in third-party defendants) or in a separate action, because no "person shall . . . be required to pay damages in an amount greater than his or her percentage of [allocated] fault . . . ." [Citations omitted.]

However, this case does not sound in tort. It is strictly a breach of contract claim, and the contract provides:

THIS APARTMENT LEASE AGREEMENT ("Lease")
is made and entered into this date of June 1, 2005 between
LAUREL WOODS APARTMENTS L.L.C[.]; with an ad-
dress of 22200 Laurel Woods Drive, Southfield, Michigan
48034 ("Landlord") (jointly severally) Najah Roumayah &
Rebecca Roumayah ("Tenant").

It is undisputed that Najah and Rebecca Roumayah
signed the lease agreement. Thus, according to its plain
terms, the parties agreed that Najah and Rebecca
Roumayah were jointly and severally liable.

By its plain terms, MCL 600.2956 does not preclude
this agreement; it applies to tort actions "or another
legal theory seeking damages for personal injury, prop-
erty damage, or wrongful death." While this breach of
contract claim clearly seeks to recover for damage to
plaintiff's property, the damages sought are pursuant to
contract and therefore are contract damages that arise
incidentally from property damage. MCL 600.2956 does
not provide that it applies to a legal theory seeking
contract damages. Nor is there any indication that the
Legislature, by amending MCL 600.2956, sought to
limit or eliminate the parties' freedom to contract. The
parties agreed that defendants would be jointly and
severally liable for any damage that either of them
caused. This agreement is not precluded by MCL
600.2956.

While we agree that there is no evidence that Najah
Roumayah caused the fire, this does not preclude his
contractual liability. As mentioned above, the contract
named Najah and Rebecca Roumayah "jointly sever-
ally" as "Tenant." The contract further provided that
"Tenant shall also be liable for any damage to the
Premises . . . that is caused by the acts or omissions of
Tenant or Tenant's guests." Accordingly, Najah Rou-
mayah is liable for any damage caused to the premises
by himself, Rebecca Roumayah, or any other guest.

C. CONCLUSION

The trial court erred in granting summary disposition in defendants' favor when the contract plainly and unambiguously provided that both defendants were jointly and severally liable for damage that either one of them caused to the premises. The trial court should have granted partial summary disposition in plaintiff's favor on this issue. The question remains, however, whether there is a question of fact regarding whether Rebecca Roumayah caused the alleged damage. Plaintiff raised this issue in its motion for summary disposition, but the trial court never addressed it, having granted defendants' motion on other grounds instead.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

WILDER, P.J., concurred.

BORRELLO, J. (*dissenting*). I respectfully dissent from the majority's conclusions that defendants were contractually bound to plaintiff in such a manner as to nullify this Court's holding in *New Hampshire Ins Group v Labombard*, 155 Mich App 369; 399 NW2d 527 (1986). Additionally, I dissent because I disagree with the majority's failure to apply the provisions of MCL 600.2956 to this case.

The trial court reached the right conclusion concerning defendants' contractual liability by its reliance on this Court's decision in *Labombard*. In *Labombard*, the plaintiff insurance company, as subrogee of the landlord, brought suit against the defendant tenant for the damages incurred after the tenant's three-year-old daughter set fire to the building while playing with

matches. *Id.* at 370. The rental agreement contained the following provision, in which the defendant tenant agreed:

"[4.] To keep the premises, including the equipment appliances, and fixtures of every kind and nature during the term of this rental agreement in as good repair and at the expiration thereof, yield up same in like condition as when taken, reasonable wear and damage by the elements excepted." [*Id.* at 371 n 1, quoting the rental agreement.]

The rental agreement also contained the following provision:

"[9.] If the premises become wholly untenantable through damage or destruction by fire not occasioned by negligence of the Tenant, this rental agreement shall be void; if partially untenantable, the Landlord shall repair the same with all convenient speed, and the obligation of the Tenant to pay the monthly rental fee shall continue in full force provided such repairs shall be completed within forty days." [*Id.*]

This Court affirmed the trial court's order granting summary disposition in favor of the tenant, noting that "[t]he rental agreement did not address the issue of [the tenant's] liability for fire damage to the premises resulting from her negligence." *Id.* at 374, citing *Nationwide Mut Fire Ins Co v Detroit Edison Co*, 95 Mich App 62; 289 NW2d 879 (1980). After discussing similar cases from other jurisdictions, this Court examined the rental agreement at issue and noted that it did not contemplate the tenant's liability for fire damage—including paragraph 9, which obligated the tenant to pay rent—notwithstanding total destruction of the residence by fire, regardless of the tenant's fault. *Labombard, supra* at 375-376. Further, a tenant may "reasonably expect" that rental payments will be used to cover fire insurance premiums. *Id.* at 376. Accordingly, "absent an

express and unequivocal agreement by a tenant to be liable to the lessor or the lessor's fire insurer in tort for negligently caused fire damage to the premises, the tenant has no duty to the lessor or insurer which would support a negligence claim for such damages." *Id.* at 377.

In *Antoon v Community Emergency Medical Service, Inc*, 190 Mich App 592; 476 NW2d 479 (1991), the landlord plaintiffs leased a building to the defendant. Subsequently, the premises were damaged by fire, which the landlord alleged was caused by the tenant's negligence. *Id.* at 593. The lease agreement was "silent with respect to who was to obtain fire insurance and how risk of fire [damage] was to be allocated." *Id.* at 594. The *Antoon* Court, citing *Labombard*, held that "a lessee is not liable for fire damage to the premises resulting from the lessee's negligence absent an express provision in the lease agreement providing for such liability." *Id.* at 596.

In *Stefani v Capital Tire, Inc*, 169 Mich App 32; 425 NW2d 500 (1988), this Court addressed the effect of an explicit clause requiring a tenant to insure the leased premises against fire loss on the tenant's responsibility for negligently caused fire damage. There, the lease contained the following provision:

> "In addition to the rentals hereinbefore specified, the Tenant agrees to pay as additional rental all premiums for insurance against loss by fire on the premises and on the improvements situated on said premises.
>
> * * *
>
> In addition, Tenant shall keep the premises fully insured against fire and casualty and plate glass damage." [*Id.* at 33-34, quoting the lease agreement.]

The *Stefani* Court noted that "[t]he *Labombard* Court seemed especially concerned about two interrelated factors: the provisions in the lease agreement about fire insurance and the expectations of the parties." *Id.* at 36. Further, this Court stated that regardless of an express assumption of liability for fire damage caused by the tenant's own negligence, the tenant could not reasonably believe that a portion of its rent was going to pay rental insurance proceeds because the lease was not silent regarding the tenant's responsibility to maintain fire insurance on the leased premises. *Id.* at 37. The Court then affirmed the jury verdict awarding damages to the landlord. *Id.* at 38.

Contrary to this line of cases, the majority contends that the trial court erred in relying on *Labombard*, *supra*, and states that the instant matter is a breach of contract action rather than an action based on negligence. According to the majority, because *Labombard* only applies to negligence cases or cases that sound in tort rather than in contract, it is inapplicable. Because the mere announcement of a legal conclusion does not make it so, I respectfully dissent.

A review of the lower court record does not support the majority's contention. Furthermore, though dismissed by the majority as inapplicable to the facts set forth in this case, *Labombard* addressed a lease agreement and the allegedly negligent actions of the tenant. As we noted in *Antoon*, *supra* at 595, citing *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967), "the contract create[d] the state of things that furnishe[d] the occasion of the tort." Specifically, a lease agreement merely brings together the tenant and the landlord and may set forth the limits on the tortfeasor's liability. Thus, pursuant to our jurisprudence, we must look to the lease agreement to determine whether defendants

expressly and unequivocally agreed to be liable in tort for negligently caused fire damages. Further, we must determine whether the lease agreement indicates that both parties expected that fire insurance would not be obtained on the premises and whether the parties allocated the risk of fire loss.

The majority concedes that the only relevant paragraph of the lease agreement concerning this issue is paragraph 9. Contrary to the great significance the majority assigns to it, I conclude that paragraph 9 of the lease agreement is nothing more than a general "yield up" provision that envisions defendants' liability for normal wear and tear to the apartment—almost an identical provision to the one in *Labombard*. It states that defendants will be "liable for any damage to the Premises . . . that is caused by the acts or omissions of" defendants and that plaintiff is responsible for all repairs to the apartment unless such damage is caused by defendants' "acts or neglect, in which case such cost and expense incurred by" plaintiff shall be paid by defendants. This is not the "express and unequivocal agreement by a tenant to be liable to the lessor or the lessor's fire insurer in tort for negligently caused fire damage to the premises" envisioned by *Labombard* and *Antoon* for a waiver. Both *Labombard* and *Antoon* require an express and unequivocal agreement by defendants to be liable in tort for negligently caused fire damage. Paragraph 9 is not an agreement by defendants to be liable in tort for fire damage to the apartment. Moreover, paragraph 9 of the lease agreement is similar to the "yield up" provision in *Labombard, supra* at 371 n 1, which this Court found did not address the tenant's liability for fire damage to the premises resulting from negligent acts. Thus, I would conclude that the lease agreement does not contain an express and unequivocal agreement by defendants to be liable in tort

for negligently caused fire damage to the premises, and, furthermore, there is nothing in the lease agreement that removes this case from the precedent this Court set forth in *Labombard*. Contrary to the conclusions of the majority, I contend that the facts of *Labombard* are so similar to those in this matter as to make its applicability a foregone conclusion.

Furthermore, a reading of the remainder of the provisions at issue supports my interpretation of the "contract." First, paragraph 13 requires defendants to allow "insurance carriers" and "fire department inspectors" access to the apartment to inspect the premises and allows plaintiff access to the apartment to make any repairs given prior notice. See *Labombard, supra* at 373-374. Second, under paragraph 16, plaintiff recommends that defendants only obtain renter's insurance for loss or damage to their personal property that is caused by fire. Plaintiff specifically excludes its liability for any damage caused by fire to defendants' personal property. Third, under the "Rules and Regulations" section, which is appended to the lease agreement, defendants agree not to "allow any activity on or around the Premises that would result in an increase in fire insurance premiums for the Premises." Finally, and most importantly, the lease agreement specifically excludes defendants' responsibility for "any portion of fire or extended coverage insurance" that plaintiff "may elect to maintain on the Premises." Moreover, defendants' responsibility for rent payments continues regardless of whether the destruction is caused by defendants' negligence.

"The language of a contract should be given its ordinary and plain meaning." *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). The lease agreement unambiguously excludes defendants' responsibility for fire insurance on the apart-

ment. Further, the contract does not allocate any of the risk of loss to defendants for fire damage to the property. *Antoon, supra* at 594. Thus, defendants could reasonably expect that a portion of the rental payments were used to cover fire insurance premiums and could reasonably conclude that they were not liable for fire damage to the property. *Labombard, supra* at 376-377. Regardless of defendants' insurance coverage or plaintiff's decision to self-insure the apartment, defendants were not obligated under the lease agreement for any negligently caused fire damage to the apartment. Accordingly, I would hold that the trial court did not err in concluding that defendants were not responsible for fire damage to the apartment.

I cannot join with the majority because I am not persuaded that merely by labeling defendants' action a "contract claim" this Court can circumvent 20 years of precedent when considering almost identical facts. In my view, the majority's holding creates a distinction where none exists regarding the essence of the claim in this case and conclusively, and without analysis, accepts defendants' characterization of its action against plaintiff as a "contract claim." This Court is not bound by a party's choice of labels for its cause of action because this would effectively exalt form over substance. *Johnston v City of Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989). If the facts presented in this case amount to a "contract" claim rather than a "tort" claim, then the same can be said of *Labombard, Antoon*, and most, if not all, of their progeny. In sum, the majority has merely announced this case a "contract" claim and by so holding has obviated 20 years of jurisprudence in this state.

I also disagree with the majority's contention that defendants are jointly and severally liable, despite MCL

600.2596, for any recoverable damages to plaintiff's personality and lost rental income.

"As part of its tort reform legislation, the Michigan Legislature abolished joint and several liability and replaced [it] with 'fair share liability.' The significance of the change is that each tortfeasor will pay only that portion of the total damage award that reflects the tortfeasor's percentage of fault." *Smiley v Corrigan*, 248 Mich App 51, 55; 638 NW2d 151 (2001). MCL 600.2956 provides as follows:

> Except as provided in section 6304, in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint. However, this section does not abolish an employer's vicarious liability for an act or omission of the employer's employee.

MCL 600.2957(1) further provides, "In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault." Thus, as our Supreme Court noted in *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 472 Mich 44, 51; 693 NW2d 149 (2005), the tort reform legislation

> eliminated joint and several liability in certain tort actions, requir[ing] that the fact-finder in such actions allocate fault among all responsible tortfeasors, and provid[ing] that each tortfeasor need not pay damages in an amount greater than his allocated percentage of fault. As such, in an action in which an injured party has sued only one of multiple tortfeasors and in which [MCL 600.2956, 600.2957, and 600.6304] apply, the tortfeasor would have no need to seek contribution from other tortfeasors, either in that same action (by bringing in third-party defendants)

or in a separate action, because no "person shall... be
required to pay damages in an amount greater than his or
her percentage of [allocated] fault.... " [Citation omit-
ted.]

I disagree with the analysis offered by the majority
regarding the applicability of joint and several liability
to the facts presented in this case. It is abundantly clear
that plaintiff is seeking "damages ... for ... property
damage" in an action based on "tort or another legal
theory." MCL 600.2956. "If the language [of a statute] is
clear and unambiguous, judicial construction is neither
required nor permitted, and the statute must be en-
forced as written." *Bell v Ren-Pharm, Inc*, 269 Mich
App 464, 466; 713 NW2d 285 (2006). Clearly, plaintiff
seeks to recover for property damage to the apartment
allegedly caused by Rebecca Roumayah's negligence.
Thus, there is no way to apply MCL 600.2956 to the
facts of this case without concluding that defendants
are severally liable for any damages that plaintiff may
recover.

Furthermore, a review of the record shows that
plaintiff has failed to set forth affirmative evidence
demonstrating that Najah Roumayah caused or con-
tributed to the fire in the apartment. A review of Najah
Roumayah's affidavit indicates that he was not present
at the apartment when the fire occurred. Because there
is no question of fact regarding whether Najah Rou-
mayah caused the fire, I would direct the trial court on
remand to enter an order granting summary disposition
in his favor.

An issue not raised in the majority opinion is
whether plaintiff may recover damages for uninsured
losses to real and personal property. Because I would
hold that plaintiff is entitled to such recovery, I would
affirm the trial court's grant of summary disposition to

defendant Najah Roumayah with respect to any theory of liability, and also affirm the trial court's conclusions that this Court's decision in *Labombard* is applicable to the facts of this case. I would remand the matter to the trial court for trial on the issues whether Rebecca Roumayah caused the damage to plaintiff's personalty and whether this damage caused plaintiff to lose rental income or other uninsured losses.