# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER GAUTHIER, as Personal Representative
of the Estate of ROYAL GAUTHIER,

UNPUBLISHED
November 13, 2014

Plaintiff-Appellant,

v

No. 317437
Genesee Circuit Court
LC No. 12-098698-CZ

BILL ELKINS, MARCIE ELKINS, and STEVE
ELKINS,

Defendants-Appellees.

Before: RIORDAN, P.J., and SAAD and TALBOT, JJ.

PER CURIAM.

Roger Gauthier, as Personal Representative of the Estate of Royal Gauthier, appeals as of right from the orders granting summary disposition in favor of Bill Elkins, Marcie Elkins, and Steve Elkins. We affirm.

Gauthier contends that the trial court erred in granting summary disposition in favor of Bill Elkins and Marcie Elkins with respect to his negligence claim. We disagree. This Court reviews de novo a lower court's decision on a motion for summary disposition.[1] "When an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint," and in doing so, "the written contract becomes part of the pleadings themselves . . . ."[2] Because the lease was attached to the complaint, and trial court did not consider facts outside of the complaint or lease in granting summary disposition on the negligence claim against Bill and Marcie Elkins, the motion for summary disposition was granted under MCR 2.116(C)(8).[3] A motion under MCR 2.116(C)(8) may not be supported with documentary evidence and "tests the legal sufficiency of the claim as pleaded," and "[a]ll factual allegations

---

[1] *Parise v Detroit Entertainment, LLC*, 295 Mich App 25, 27; 811 NW2d 98 (2011).

[2] *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007); see also MCR 2.113(F).

[3] *Spiek v Dep't of Transp*, 456 Mich 331, 338; 572 NW2d 201 (1998).

-1-

and reasonable inferences supporting the claim are taken as true."[4]  A motion under MCR 2.116(C)(8) should be granted "only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery."[5]  Construction and interpretation of a contract presents a question of law that this Court reviews de novo.[6]

Gauthier contends that the holding in *New Hampshire Ins Group v Labombard*[7] is not binding precedent because the decision was not issued on or after November 1, 1990,[8] and thus should not have been relied on by the trial court in granting summary disposition in favor of the Elkinses.  Cases decided before November 1, 1990, however, can be considered persuasive authority.[9]

In *Labombard*, the plaintiffs, a landlord and subrogee insurance company, brought an action in tort against the defendant, a tenant of the landlord's apartment building.[10]  The defendant's three-year-old daughter was playing with matches and started a fire that destroyed the apartment.[11]  In their complaint, the plaintiffs alleged that the defendant was negligent in allowing her daughter to play with matches.[12]  The defendant filed a motion for summary disposition relying on paragraphs 4[13] and 9[14] of the rental agreement and argued that pursuant to

---

[4] *McHone v Sosnowski*, 239 Mich App 674, 676; 609 NW2d 844 (2000).

[5] *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

[6] *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

[7] 155 Mich App 369; 399 NW2d 527 (1986).

[8] MCR 7.215(J)(1).  MCR 7.215(J)(1) provides:

> A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.

[9] *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

[10] *Labombard*, 155 Mich App at 370-371.

[11] *Id*. at 370.

[12] *Id*. at 371.

[13] "In ¶ 4, defendant agreed: To keep the premises, including the equipment appliances, and fixtures of every kind and nature during the term of this rental agreement in as good repair and at the expiration thereof, yield up same in like condition as when taken, reasonable wear and damage by the elements excepted."  *Id.* at 371 n 1 (internal quotation marks omitted).

[14] "¶ 9 provided: If the premises become wholly untenantable through damage or destruction by fire not occasioned by negligence of the Tenant, this rental agreed shall

the rental agreement, she was "absolved . . . of liability for fire damage to the rental premises," and that, "as a matter of law, a tenant is not liable for fire damage caused by his or her own negligence."[15]

The *Labombard* Court noted that "[t]he rental agreement did not address the issue of defendant's liability for fire damage to the premises resulting from her negligence."[16] After analyzing similar, but not identical situations in which courts of other jurisdictions have ruled that tenants are not liable in such cases,[17] and the *Labombard* Court held:

> There was no express agreement by defendant to be liable to Higgerson for fire damage to the premises resulting from defendant's negligence. On the contrary, the rental agreement strongly suggests that such liability was not contemplated. *The agreement clearly evidences the parties' mutual expectation that fire insurance would be obtained by the lessor.* References are made to defendant's obligation to observe fire regulations, to follow underwriters' requirements so as to reduce fire hazards and insurance rates, and to allow the lessor to show the property to insurance agents. The sole reference to fire damage is in paragraph 9, where it is declared that the agreement would be void if the premises were rendered wholly untenantable by fire not caused by defendant's negligence. In the event of partial fire damage, defendant's obligation to pay rent would continue if the lessor completed repairs within forty days. The clear implication is that defendant's obligation to pay rent would continue notwithstanding total destruction by fire, if the destruction resulted from her negligence. Nothing in the rental agreement suggests, however, that defendant agreed to be liable to the lessor, or his insurer, for the full amount of negligently caused fire damage.
>
> We are persuaded that a tenant may reasonably expect that his or her rental payments will be used to cover the lessor's ordinary and necessary expenses, including fire insurance premiums. Tenants reasonably expect that, by effectively contributing to the premium payments, they will occupy a position akin to the insured and will be free from tort liability for negligently caused fire damage to the premises. *We hold that, absent an express and unequivocal agreement by a tenant to be liable to the lessor or the lessor's fire insurer in tort for negligently caused fire damage to the premises, the tenant has no duty to the lessor or insurer which would support a negligence claim for such damages.*

be void; if partially untenantable, the Landlord shall repair the same with all convenient speed, and the obligation of the Tenant to pay the monthly rental fee shall continue in full force provided such repairs shall be completed within forty days." *Id*. (internal quotation marks omitted).

[15] *Id*. at 371.

[16] *Id*. at 374.

[17] *Id*. at 374-375.

Since there was no such agreement in this case, we affirm entry of summary judgment in favor of defendant to the extent plaintiffs seek recovery for damages to the leasehold premises resulting from defendant's negligence.[18]

While the *Labombard* Court made a steadfast ruling that the tenant has no duty to the lessor in tort for negligently causing fire damage absent an express and unequivocal agreement by the tenant to be liable, in doing so, the Court looked to the agreement itself to determine the parties' mutual expectations and whether liability was contemplated. Accordingly, this rule of law is applied on a case-by-case basis to determine whether there is an express and unequivocal agreement by the tenant to be liable in tort for negligently causing fire damage.

An analysis of the relevant lease provisions reveals no express and unequivocal agreement by Bill and Marcie Elkins to be liable to Gauthier in tort for negligently causing fire damage to the home. The lease provides, in relevant part:

> **16. Damage to Premises.** If the demised premises, or any part thereof, shall be partially damaged by fire or other casualty not due to Lessee's negligence or willful act or that of his employee, family, agent, or visitor, the premises shall be promptly repaired by Lessor and there shall be an abatement of rent corresponding with the time during which, and the extent to which, the leased premises may have been untenantable; but, if the leased premises should be damaged other than by Lessee's negligence or willful act or that of his employee, family, agent, or visitor to the extent that Lessor shall decide not to rebuild or repair, the term of this lease shall end and the rent shall be prorated up to the time of the damage.
>
> **17. Dangerous Materials.** Lessee shall not keep or have on the leased premises any article or thing of dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire on the lease premises or that might be considered hazardous or extra hazardous by any responsible insurance company.
>
> * * *
>
> **20. Maintenance and Repair.** Lessee will, at his sole expense, keep and maintain the lease premises and appurtenances in good and sanitary condition and repair during the term of this lease and any renewal thereof. In particular, Lessee shall keep the fixtures in the house or on or about the leased premises in good order and repair; keep the furnace clean; keep the electric bills in order; keep walks free from dirt and debris; and, at his sole expense, shall make all required repairs to the plumbing, range, heating, apparatus, and electric and gas fixtures whenever damage thereto shall have resulted from Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor. Major maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that

---

[18] *Labombard*, 155 Mich App at 375-377 (emphasis added).

of his employee, family, agent, or visitor, shall be the responsibility of Lessor or his assigns.  Lessee agrees that no signs shall be placed or painting done on or about the leased premises by Lessee or at his direction without the prior written consent of Lessor.

\* \* \*

**22.  Insurance.**  Lessor has obtained insurance to cover fire damage to the building itself and liability insurance to cover certain personal injuries occurring as a result of property defects or Lessor's negligence.  Lessor's insurance does not cover Lessee's possessions or Lessee's negligence.  Lessee shall obtain a Lessee's insurance policy to cover damage or loss of personal possessions, as well as losses resulting from their negligence.

With respect to paragraph 16 of the lease, the first part of this provision addresses Gauthier's obligation to repair the premises and abate rent when the premises is damaged by fire that was not caused by Bill or Marcie Elkins's negligence, or that of a family member.  This sentence simply states that Gauthier must promptly repair the premises and abate rent when the damage by fire was not caused by the Elkinses' negligence, and it cannot be read to impose liability on Bill and Marcie Elkins for a family member negligently causing a fire.  The second part of this provision provides that, in the event the premises is damaged by fire other than by Bill or Marcie Elkins's negligence, or that of a family member, to the extent that Gauthier decides not to rebuild or repair the premises, the lease shall terminate and rent shall be prorated up to the time of the damage.  Again, this portion of the provision does not impose liability on Bill and Marcie Elkins for a family member negligently causing a fire, but rather, it merely provides that, in the event that the Elkinses are not negligent, to the extent that Gauthier decides not to rebuild or repair the home, the term of this lease shall end and the rent shall be prorated up to the time of the damage.  Accordingly, absent from paragraph 16 of the lease is any clause that expressly and unequivocally provides that Bill and Marcie Elkins are responsible for fire damage to the premises, or that they must reimburse Gauthier for the cost of repairs if their negligence, or that of a family member, caused the fire.[19]

In regard to paragraph 22 of the Lease, in the first sentence, Gauthier agreed that he had obtained insurance to cover fire damage to the home itself, and liability insurance to cover certain personal injuries occurring as a result of property defects or Gauthier's own negligence.  The second sentence provides that Gauthier's insurance does not cover the possessions of Bill and Marcie Elkins, or their negligence.  The final sentence in this paragraph states that Bill and Marcie Elkins shall obtain a "Lessee's insurance policy" to cover "damage or loss of personal possessions, as well as losses resulting from their negligence."  Although the second sentence provides that Gauthier's insurance does not cover the Elkinses' "negligence," and the third sentence provides that Bill and Marcie Elkins shall obtain an insurance policy to cover "damage or loss of personal possessions, as well as losses resulting from their negligence," reading the paragraph as a whole suggests that the lease did not impose on them liability for negligently

---

[19] *Id*. at 377.

causing fire damage to the home. Instead, reading the paragraph in its entirety suggests that while Gauthier was not required to maintain insurance covering other losses or damages resulting from the Elkinses' negligence, such as those resulting from personal injury claims, he was still required to maintain insurance to cover fire damage to the home. Consequently, Bill and Marcie Elkins reasonably expected that in purchasing a renter's insurance policy covering their personal possessions and liability to third parties for their negligence, and by Gauthier representing that he obtained insurance to cover fire damage to the property itself, that they would be free from tort liability for negligently causing fire damage to the home.[20] Accordingly, no provision under this paragraph expressly and unequivocally imposed liability on Bill and Marcie Elkins for negligently causing fire damage to the home.

Additionally, despite Gauthier's contention otherwise, paragraphs 17 and 20 also do not contemplate liability for fire damage. Paragraph 17 of the lease does not expressly provide that Bill and Marcie Elkins are liable to Gauthier in tort for negligently causing fire damage to the premises. Rather, the provision merely prohibits them from having "any article or thing of a dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire on the leased premises or that might be considered hazardous or extra hazardous by an responsible insurance company." Furthermore, paragraph 20 makes no reference to fire damage, but rather, allocates a general duty to maintain and repair the premises between the parties. Although the second to the last sentence of paragraph 20 provides that "[m]ajor maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his . . . family . . . shall be the responsibility of [the] Lessor," this sentence does not specifically contemplate fire damage or insurance, as do paragraphs 16 and 22, and does not expressly provide that Bill and Marcie Elkins are liable in tort for negligently causing fire damage. Accordingly, none of the provisions of the Lease relied upon by Gauthier expressly and unequivocally provide that Bill and Marcie Elkins agreed to be liable to Gauthier in tort for negligently causing fire damage to the home itself. Therefore, the trial court did not err concluding that Bill and Marcie Elkins had no duty, and by granting summary disposition in their favor with respect to the negligence claim.

Next, Gauthier contends that the trial court erred in concluding that Steve Elkins is a tenant, and by applying the holding in *Labombard* in dismissing Gauthier's negligence claim against him. We disagree. In contrast to the first motion for summary disposition, the trial court relied on documentary evidence beyond the parties' pleadings in dismissing Gauthier's negligence claim against Steve Elkins, which means the motion was granted under MCR 2.116(C)(10).[21] A motion for summary disposition "under MCR 2.116(C)(10) tests the factual sufficiency of the complaint."[22] This Court reviews a motion brought under MCR 2.116(C)(10) by considering "the affidavits, pleadings, depositions, admissions, and other documentary

---

[20] *Id*.

[21] *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

[22] *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

-6-

evidence submitted by the parties in the light most favorable to the party opposing the motion."[23] A motion based on "MCR 2.116(C)(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[24] A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ.[25]

It is undisputed that Bill and Marcie Elkins were tenants of the home; however, the issue is whether Steve Elkins was considered a tenant, and thus, entitled to the same treatment as his parents under the holding in *Labombard*. While the parties acknowledge that Steve Elkins was an "occupant" of the home, they contest whether he is a tenant under Michigan law. The term "occupant" is undefined in the Lease. When a term in a contract is undefined, "reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings," and in such cases, consulting the dictionary is appropriate.[26] The word "occupant" is defined as "a person or group that occupies or has quarters or space in or on something" or "a tenant of a house, estate, office, etc.; resident."[27] Although the common usage of the term "occupant" includes a "tenant of a house," Gauthier contends that the usage of "occupant" in the lease is distinguishable from word "tenant," as defined under Michigan law.

This Court, in *Nelson v Grays*,[28] analyzed whether the term "tenant," as used in the "anti-lockout statute,"[29] "refers to all persons occupying the premises under a lease," such as children of the lessees, "or is limited to the person or persons actually obligated to pay rent . . . ." The anti-lockout statute does not define the word "tenant," and the Court acknowledged that it may reference the dictionary definition of the term in construing the common and approved usage.[30] The Court recognized the following dictionary definitions:

> The term "tenant" has been defined as "a person or group that rents and occupies land, a house, an office, or the like, from another, usu[ally] under the terms of a lease; lessee." *Random House Webster's College Dictionary* (1992). Black's Law Dictionary (6th ed) defines "tenant" as "one who has the temporary use and

---

[23] *Greene v AP Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (citation and quotation marks omitted).

[24] *Id*. (citation and quotation marks omitted).

[25] *Debano-Griffin v Lake Co Bd of Comm'rs*, 493 Mich 167, 175; 828 NW2d 634 (2013) (citation omitted).

[26] *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009) (citation and quotation marks omitted).

[27] *Random House Webster's College Dictionary* (2001).

[28] 209 Mich App 661, 663-664; 531 NW2d 826 (1995).

[29] MCL 600.2918(2).

[30] *Nelson*, 209 Mich App at 664.

occupation of real property owned by another person (called the 'landlord'), the duration and terms of his tenancy being usually fixed by an instrument called a 'lease'." Also, "[o]ne renting land and paying for it" is considered a tenant. *Id.*[31]

The Court then noted that under the landlord tenant relationship act (LTRA),[32] "tenant" means " 'any person who occupies a rental unit for residential purposes with the landlord's consent for an agreed-upon consideration.' "[33] The Court concluded that the LTRA recognizes that a "tenant" is the "individual . . . who pay[s] consideration to the landlord for the right to occupy rental property, rather than the members of the larger family unit dwelling in the rental property."[34]

The *Nelson* Court also pointed, in part, to the Supreme Court decision in *Grant v Detroit Ass'n of Women's Clubs*.[35] In *Grant,* the Supreme Court analyzed "whether a landlord-tenant legal relationship may be recognized pursuant to a contract of employment where use and occupancy of an apartment are the sole and full compensation for the services rendered."[36] The *Grant* Court, in the context of summary eviction proceedings, noted:

> It is generally held that, in order that the relation of landlord and tenant may exist, there must be present all the necessary elements of the relation, which include permission or consent on the part of the landlord to occupancy by the tenant, subordination of the landlord's title and rights on the part of the tenant, a reversion in the landlord, the creation of an estate in the tenant, the transfer of possession and control of the premises to him, and, generally speaking, a contract, either express or implied, between the parties.[37]

Ultimately, the *Nelson* Court held that "[i]n light of the dictionary definitions of tenant, the usage of tenant in the LTRA, and the meaning given to tenant by the courts," the children were not entitled to separate damages under the anti-lockout statute.[38] The *Nelson* Court reasoned:

> While plaintiff had an oral contract with defendant to pay rent in exchange for possession and occupancy of the rental property, the record is devoid of any evidence that plaintiff's children had a separate contractual right to occupy the

---

[31] *Id*. (alterations in original).

[32] MCL 554.601 *et seq*.

[33] *Nelson*, 209 Mich App at 664-665, quoting MCL 554.601(d).

[34] *Nelson*, 209 Mich App at 665.

[35] 443 Mich 596; 505 NW2d 254 (1993).

[36] *Id*. at 599.

[37] *Id*. at 605 n 6 (citation and quotation marks omitted).

[38] *Nelson*, 209 Mich App at 666.

premises. Rather, the children had a right to occupy the mobile home because of plaintiff's lease contract with defendant. Thus, the court properly awarded $200 in damages under § 2918(2)(f) to plaintiff only in her individual capacity.

Our conclusion is further supported by a strict construction of § 2918, a statute that, in derogation of the common law, provides for penalties in the event of its violation. Under the principle of strict construction, we believe that the Legislature's intent to include the children of lessees as "tenants" under § 2918 must affirmatively appear in the statutory language. Because no such language is found in § 2918, we conclude that both the district court and the circuit court correctly determined that plaintiff's minor children were not considered "tenants" entitled to statutory damages pursuant to § 2918(2).[39]

The recent trend in Michigan suggests that a "tenant" only includes those parties on the lease that pay consideration to the landlord for the right to occupy the property, and not the minor children or other family members occupying the property. Nevertheless, this Court concludes that the above-mentioned authorities' definition of a "tenant" is distinguishable from the present circumstances and does not apply in the context of actions in tort against tenants for negligently causing fire damage to real property. First, the *Nelson* Court specifically interpreted the word "tenant" in the context of the anti-lockout statute, which the Court acknowledged when it held "[u]nder the principle of strict construction, we believe that the Legislature's intent to include the children of lessees as "tenants" under § 2918 must affirmatively appear in the statutory language."[40] The instant case involves the application of a common law principle that has no relation to the principles of strict statutory construction. Next, the *Grant* Court analyzed "whether a landlord-tenant legal relationship may be recognized pursuant to a contract of employment" in the context of eviction proceedings.[41] This case did not involve an employment contract or eviction proceedings, but instead, a negligence action against a minor child of the lessees that was occupying the property in accordance with the lease agreement. Also, the purpose of the LTRA is:

to regulate relationships between landlords and tenants relative to rental agreements for rental units; to regulate the payment, repayment, use and investment of security deposits; to provide for commencement and termination inventories of rental units; to provide for termination arrangements relative to rental units; to provide for legal remedies; and to provide penalties.[42]

While the LTRA's definition of the term "tenant" encompasses an individual who occupies residential property at the consent of the landlord "for an agreed upon consideration," the LTRA

---

[39] *Id*. (citation omitted).

[40] *Id*.

[41] *Grant*, 443 Mich at 599-600.

[42] 1972 PA 348; MI ST Ch 554, Refs & Annos.

does not apply to negligence claims, especially those involving minor children. Consequently, the term "tenant" in the context of a claim against a tenant for negligently causing fire damage to a home is distinguishable from the above-mentioned authority.

On the basis of the common usage of the terms "occupant" and "tenant," and the application of the holding in *Labombard,* Steve Elkins was considered a tenant of the home. As discussed above, the lease clearly evidenced the parties' mutual expectation that Gauthier had obtained fire insurance that would cover damage to the home itself. Even though Bill and Marcie Elkins agreed to obtain renter's insurance to cover damages to personal possessions and other losses resulting from their negligence, or that of a family member, this did not render nugatory the provision requiring Gauthier to maintain insurance for fire damage to the home. Under the terms of the lease, as both a named occupant on the lease and a minor child of the lessees, it was equally expected that Steve Elkins would not have to purchase his own liability insurance to cover fire damage as a result of his negligence. Although Steve Elkins was not a party to the lease itself and did not pay agreed upon consideration for his occupancy, he was a named occupant in the lease for a fixed period of time. Because Steve Elkins was occupying the home with the consent of Gauthier pursuant to the lease, and was a minor child of the lessees, who were subject to an agreement by which they reasonably expected that Gauthier would maintain insurance to cover fire damage of the home, Steve Elkins is considered a tenant. Accordingly, the holding in *Labombard* was applicable and the trial court correctly granted summary disposition in favor of Steve Elkins with respect to Gauthier's negligence claim.

Lastly, Gauthier contends that the trial court erred in granting summary disposition in favor of Bill and Marcie Elkins with respect to his breach of contract claim. We disagree. Although the first motion for summary disposition was brought under MCR 2.116(C)(10), the trial court did not consider facts outside of the pleadings in resolving of the breach of contract claim against Bill and Marcie Elkins. Consequently, this motion was granted under MCR 2.116(C)(8),[43] and is reviewed de novo.[44] Again, construction and interpretation of a contract presents a question of law that this Court reviews de novo.[45]

In a breach of contract claim, this Court applies the following well-established rules of contract construction:

> In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law.[46]

---

[43] *Spiek*, 456 Mich at 338.

[44] *Parise*, 295 Mich App at 27.

[45] *Klapp*, 468 Mich at 463.

[46] *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008) (citations omitted).

Further, a court must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory."[47]

> Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.[48]

In *Roumayah*, the case arose from a fire in an apartment owned by the plaintiff and leased by the defendants.[49] The defendants signed a lease that contained the following provision:

> 9. <u>Maintenance Repairs and Damage of Premises</u>. Tenant shall keep the Premises and all appliances in good condition and repair, and shall allow no waste of the Premises or any utilities. Tenant shall also be liable for any damage to the Premises or to Landlord's other property (i.e., other units, common facilities and equipment) that is caused by the acts or omissions of Tenant or Tenant's guests. Landlord shall perform all maintenance and repairs to the roof, walls and structural elements, all mechanical, plumbing and electrical systems at Landlord's cost and expense, unless such damage is caused by Tenant[']s acts or neglect, in which case such cost and expense incurred by Landlord shall be paid by Tenant.[50]

In interpreting the language of the lease, the Court found that the lease agreement was clear and unambiguous, and the Court concluded:

> defendants, who are defined as "Tenant," are liable for "any damage" caused by their act or omission. Fire damage is clearly encompassed by the broad term "any damage." And defendants' liability is not limited to damage caused by their negligence, but rather, it extends to any damage that they cause, negligently or otherwise.[51]

The defendants also contended that other paragraphs in the lease suggested that the parties agreed that the plaintiff would insure the premises.[52] Despite this contention, the Court held that "in none of these provisions [did the] plaintiff agree to insure the premises. Rather, these provisions [were] applicable [only] if the premises [were] insured by either party."[53] The Court

---

[47] *Klapp*, 468 Mich at 468.

[48] *Id.* at 469 (citation and quotation marks omitted).

[49] *Roumayah*, 274 Mich App at 632.

[50] *Id.* at 632-633 (alteration in original).

[51] *Id.* at 638.

[52] *Id.*

[53] *Id.* at 640 (emphasis omitted).

concluded that "[b]ecause the parties agreed that defendants would be liable for any damage they caused to the premises, the trial court erred in granting . . . summary disposition . . . ."[54]

The terms of the lease in the instant case are distinguishable from the lease in *Roumayah*. Specifically with respect to maintenance and repair and insurance, the lease in the present case provides as follows:

> **20.  Maintenance and Repair.**  Lessee will, at his sole expense, keep and maintain the lease premises and appurtenances in good and sanitary condition and repair during the term of this lease and any renewal thereof.  In particular, Lessee shall keep the fixtures in the house or on or about the leased premises in good order and repair; keep the furnace clean; keep the electric bills in order; keep walks free from dirt and debris; and, at his sole expense, shall make all required repairs to the plumbing, range, heating, apparatus, and electric and gas fixtures whenever damage thereto shall have resulted from Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor.  Major maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor, shall be the responsibility of Lessor or his assigns.  Lessee agrees that no signs shall be placed or painting done on or about the leased premises by Lessee or at his direction without the prior written consent of Lessor.

> \* \* \*

> **22.  Insurance.**  Lessor has obtained insurance to cover fire damage to the building itself and liability insurance to cover certain personal injuries occurring as a result of property defects or Lessor's negligence.  Lessor's insurance does not cover Lessee's possessions or Lessee's negligence.  Lessee shall obtain a Lessee's insurance policy to cover damage or loss of personal possessions, as well as losses resulting from their negligence.

As evident from the holding in *Roumayah,* the second sentence within paragraph 9 of the parties' lease contained the critical language pertinent to the holding.  The language in that paragraph expressly provided, "Tenant shall also be liable for any damage to the Premises or to Landlord's other property (i.e., other units, common facilities and equipment) that is caused by the acts or omissions of Tenant."[55]  In this case, under a similar provision, paragraph 20 provides, "Major maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his . . . family . . . shall be the responsibility of the Lessor or his assigns."  The key difference between the two provisions is that the provision in *Roumayah* expressly held the tenant liable for any damage to the premises caused by acts or omission of the tenant, while in this case, paragraph 20 states that the lessor is not responsible for major

---

[54] *Id*.

[55] *Id*. at 633 (quotation omitted).

maintenance and repair due to the negligence of lessees or their family members. Consequently, paragraph 20 does not specifically hold Bill and Marcie Elkins liable for any damage.

In addition, the *Roumayah* Court explained that none of the provisions in the lease provided that the landlord agreed to insure the premises.[56] Contrarily, in this case, paragraph 22 provides, "Lessor has obtained insurance to cover fire damage to the building itself . . . ." Under this paragraph, Gauthier expressly agreed that he had obtained insurance to cover fire damage to the building. To interpret the contract as Gauthier suggests, that Bill and Marcie Elkins are responsible for fire damage to the building itself, would render the first sentence of paragraph 22, requiring Gauthier to obtain insurance to cover fire damage to the building, nugatory. Given that the lease clearly and unambiguously provides that Gauthier is responsible to insure the home for fire damage, Bill and Marcie Elkins were not liable under the terms of the lease for fire damage, even due to their own negligence or that of Steve Elkins. Accordingly, the trial court did not err in granting summary disposition in favor of Bill and Marcie Elkins with respect to the cause of action for breach of contract.

Affirmed.


/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Talbot

---

[56] *Id*. at 638-640.