# STATE OF MICHIGAN

# COURT OF APPEALS

---

SECURA INSURANCE,

      Plaintiff-Appellee,

v

JOY B. THOMAS,

      Defendant-Appellant,

and

DELORES SWINGLER-REID and CARL REID,

      Defendants.

UNPUBLISHED
December 1, 2015

No. 322240
Muskegon Circuit Court
LC No. 12-048218-CK

---

Before: TALBOT, C.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

In this declaratory action involving an insurance contract, defendant Joy B. Thomas appeals as of right the trial court's order awarding a judgment in favor of plaintiff, Secura Insurance, against Thomas and codefendant Delores-Swingler Reid, jointly and severally, in the amount of $68,787.24. This order followed the trial court's previous order granting Secura's motion for summary disposition and declaring the subject insurance policy void on the basis of misrepresentations made by Thomas and Swingler-Reid. We affirm in part, vacate in part, and remand.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Secura provided Swingler-Reid and her husband Carl, who reside in Michigan, with homeowners insurance, personal automobile insurance, and umbrella liability insurance. With respect to the auto policy, Secura provided personal injury protection (PIP) benefits as well as optional underinsured motorist (UIM) coverage. While the policy, as originally issued, did not provide coverage for a 2001 Chevrolet Impala—the vehicle at issue in this case—Swingler-Reid

-1-

later added that vehicle to the policy in November 2009. According to Secura, when Swingler-Reid added the Impala to her policy, she represented that she was the owner of the automobile.[1]

On February 8, 2010, the Impala was involved in an automobile accident in the state of Georgia. Thomas—Swingler-Reid's daughter and a resident of Atlanta, Georgia—was the driver. Thomas thereafter filed a claim with Secura for PIP benefits, which Secura paid. Thomas also filed a lawsuit in Georgia against the allegedly negligent driver who caused the accident. Finally, Thomas filed a claim with Secura for UIM benefits. In response to the latter claim, Secura filed the instant declaratory action seeking to rescind the policy, based, in relevant part, on its contention that Swingler-Reid was not the owner of the Impala and that both Swingler-Reid and Thomas had made material misrepresentations about Swingler-Reid's ownership of the automobile.

In connection with this litigation, Secura deposed both Thomas and Swingler-Reid. During their respective depositions, each testified that the Impala was in Georgia on the date of the accident because Swingler-Reid had driven it there to visit Thomas. Each further asserted that Thomas was driving the Impala on the date of the accident because it had been parked in the driveway, blocking Thomas's vehicle, and Thomas needed to run errands.

In the midst of the instant litigation, Swingler-Reid filed a separate action against Secura in Oakland County for PIP/UIM benefits in connection with two automobile accidents that she was allegedly involved in on October 22, 2009, and December 22, 2009, respectively. As part of that litigation, Secura again deposed Swingler-Reid. In that deposition, Swingler-Reid testified that following her second accident in December 2009, she did not drive again until April 2010. She further indicated that in February 2010, she was in Michigan receiving medical care, and that she never went out of town during this time frame. As part of that litigation, Secura also obtained several of Swingler-Reid's medical records, which definitively showed that she was in Michigan the day of the February 8, 2010 accident that took place in Georgia.

In light of the above developments, Secura, with the trial court's permission, filed an amended complaint which added counts of fraud and conspiracy to commit fraud. It then moved the trial court for summary disposition. In pertinent part, Secura argued that it was entitled to void the policy pursuant to the terms of the policy itself—specifically, a "concealment, misrepresentation or fraud" provision—because Swingler-Reid made false representations in connection with Thomas's UIM claim. Additionally, Secura argued that Thomas and Swingler-Reid had committed actionable fraud and conspiracy to commit fraud by lying about the circumstances surrounding the accident (i.e., why the Impala, if owned by Swingler-Reid and garaged in Michigan, was involved in an accident in Georgia involving Thomas). Following a hearing on the matter, the trial court granted Secura's motion, concluding that the record evidence clearly showed that Thomas and Swingler-Reid misrepresented the circumstances surrounding the February 8, 2010 accident. In making this ruling, the court referenced the terms

---

[1] According to both Thomas and Swingler-Reid, Thomas gave the Impala to Swingler-Reid in November 2009. A transfer of title, which was signed in December 2009 but never registered with the Secretary of State, is contained in the record.

of the insurance policy. The court's written order stated that the policy was "voided and/or rescinded" with regard to the Impala. Because it granted summary disposition in Secura's favor, the trial court found that a cross-motion for summary disposition filed by Thomas was "moot," and therefore denied it.

In June 2013, Secura moved the trial court for summary disposition pursuant to MCR 2.116(C)(10) on the issue of damages. Secura argued there was no genuine issue of material fact as to its recovery of the following damages: (1) all benefits paid by Secura in connection with Thomas's PIP claim; (2) all costs, expenses, and attorney fees expended to defend Thomas's claim in Georgia; (3) all costs, expenses, and attorney fees expended to prosecute the instant litigation; (4) all benefits paid by Secura in connection with Swingler-Reid's PIP claim; and (5) all costs, expenses, and attorney fees expended in connection with Swingler-Reid's PIP/UIM claim in Oakland County. Secura styled its request for damages as one seeking "restitution." It asked the court to hold Thomas and Swingler-Reid jointly and severally liable with respect to the damages.

At an October 18, 2013 hearing, the trial court granted the motion for summary disposition as to damages, stating that the damage award "would be based on the—all the counts that were set forth involving fraud and misrepresentation, as well as the [request for] rescission." It awarded Secura $68,787.24 in damages against Thomas and Swingler-Reid, jointly and severally.[2] This award consisted of the entire amount requested by Secura and included recoupment of benefits paid as well as costs and attorney fees. Thomas now appeals as of right.[3]

## II. RESCISSION OF THE POLICY

Thomas first argues that the trial court erred in granting summary disposition in Secura's favor with regard to rescinding the policy. We disagree. We review de novo a trial court's decision on a motion for summary disposition. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). It is apparent that the trial court granted summary disposition in this case pursuant to MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In deciding a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. The proper interpretation of a contract is a question of law that we review de novo. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 526; 791 NW2d 724 (2010).

---

[2] Secura did not seek to hold Carl Reid liable on the damage award, and he was subsequently dismissed from the lawsuit.

[3] Swingler-Reid has not filed a claim of appeal in this matter.

The crux of Thomas's argument is that the trial court erred in granting summary disposition in Secura's favor without addressing each element of actionable fraud, see *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), and where there existed genuine issues of material fact on those elements. We need not consider this argument, however, because it is clear that rescission was justified pursuant to the terms of the policy itself, without regard to the elements of actionable fraud. "Insurance policies are contracts and, in the absence of an applicable statute, are subject to the same contract construction principles that apply to any other species of contract." *Id*. at 554 (citation and quotation marks omitted). "[W]hen a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual . . . ." *Id*. The claim at issue in this case involved underinsured motorist coverage, which is optional coverage not mandated by statute. *Dawson v Farm Bureau Mut Ins Co*, 293 Mich App 563, 568; 810 NW2d 106 (2011). Thus, the express terms of the contract governed the claim. The relevant policy provision provided, in pertinent part, that the policy would be void "if, whether before or after loss, an *insured* has" "[m]ade false statements . . . [r]elating to this insurance." This provision is clear and unambiguous: Secura was entitled to void the policy if an insured,[4] at any time, made false statements relating to the policy. "[U]nless a contract provision violates law or one of the traditional [contract] defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005) (citation and quotation marks omitted).

The trial court properly determined that there was no genuine issue of material fact that both Thomas and Swingler-Reid made false statements in connection with the February 8, 2010 accident that led to Thomas's claim for UIM benefits. Specifically, while each testified that the Impala was in Georgia in February 2010 because Swingler-Reid had traveled to visit Thomas, and that Thomas was driving the Impala because her own vehicle was blocked in her driveway, subsequent evidence definitively proved this story to be false. Notably, by Swingler-Reid's own admission, she was never in Georgia in February 2010, but was rather in Michigan receiving medical care in connection with her October and December 2009 accidents. Her medical records confirmed as much. As such, because Thomas and Swingler-Reid both made false statements regarding the February 8, 2010 accident, Secura was entitled, under the plain terms of the policy, to void the policy.

Thomas also argues on appeal that the trial court erred in denying her cross-motion for summary disposition. On the basis of the above conclusion, we disagree. However, we briefly note and explore two of Thomas's arguments. She contends that MCL 257.520(f)(1) prohibited Secura from voiding the policy in this case. The statute provides, in pertinent part:

> (f) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

---

[4] In this regard, we note that pursuant to the terms of the policy, an "insured" means not only the named insured, but also "any family member" and "any other person occupying [the named insured's] covered auto." Thus, this provision applied to both Swingler-Reid and Thomas.

(1) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy, and except as hereinafter provided, no fraud, misrepresentation, assumption of liability or other act of the insured in obtaining or retaining such policy, or in adjusting a claim under such policy, and no failure of the insured to give any notice, forward any paper or otherwise cooperate with the insurance carrier, shall constitute a defense as against such judgment creditor. [MCL 257.250.]

However, as Secura correctly notes in its brief on appeal, MCL 257.520(f)(1) is limited in its application by MCL 257.520(g), which provides, in relevant part:

Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter.

As our Supreme Court has previously concluded, the effect of MCL 257.520(g) is to render MCL 257.520(f)(1) "inapplicable" to coverages that are not required by statute (i.e., optional coverages). *Cohen v Auto Club Ass'n*, 463 Mich 525, 530; 620 NW2d 840 (2001). Because underinsured motorist coverage—the coverage at issue in this case—is optional, *Dawson*, 293 Mich App at 568, MCL 257.520(f)(1) did not bar Secura from seeking rescission of the policy after the accident occurred.

Thomas next argues that Secura was precluded by MCL 500.2123 from cancelling the policy because it failed to provide notice as required by that statute. MCL 500.2123 pertains to the cancellation of insurance policies, and provides, in pertinent part:

(1) Except as provided in subsection (2) or (3), a termination of insurance shall not be effective unless the insurer, at least 30 days prior to the date of termination, delivers or mails to the named insured at the person's last known address a written notice of termination. The notice shall state the effective date of termination and each specific reason for the termination.

We do not agree with Thomas's position. MCL 500.2123 governs the *cancellation* of policies, not the rescission of policies. See *Lewis v Farmers Ins Group*, 154 Mich App 324, 329; 397 NW2d 297 (1986). Cancellation is a distinct remedy from rescission; whereas cancellation terminates the contract prospectively and releases the parties from further obligation to each other, rescission "annul[s] the contract and restore[s] the parties to the relative positions which they would have occupied if no such contract had ever been made." *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 479; 350 NW2d 283 (1984) (citations and quotations omitted).

## III. DAMAGES

Thomas next argues that the trial court erred in awarding Secura $68,787.94 in damages as restitution for (1) benefits previously paid by Secura in connection with Thomas's PIP claim; (2) all costs, expenses, and attorney fees expended to defend Thomas's claim in Georgia; (3) all costs, expenses, and attorney fees expended to prosecute the instant litigation; and (4) all benefits paid and costs, expenses, and attorney fees expended in connection with Swingler-Reid's separate PIP/UIM claim in Oakland County. For the reasons discussed below, we vacate all but the first of the above enumerated damage awards and remand for further proceedings.[5]

## A. ATTORNEY FEES

We first turn our attention to the issue of attorney fees. We review for an abuse of discretion the trial court's decision to award attorney fees. *In re Waters Drain Drainage Dist*, 296 Mich App 214, 216; 818 NW2d 478 (2012). "A court may award costs and attorney fees only when specifically authorized by statute, court rule, or a recognized exception." *Id.* Here, the trial court did not cite any basis for its award of attorney fees. As such, we remand and instruct the trial court to articulate a basis for the award of attorney fees. See *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 364; 824 NW2d 609 (2012).

Secura urges us to affirm the trial court's award of attorney fees for two reasons. It first argues that we should affirm the award of attorney fees because the remedy involved— restitution—is an equitable remedy, and it contends that a court may award attorney fees when the failure to do so would be inequitable. However, a court may not award attorney fees "solely on the basis of what it perceives to be fair or on equitable principles." *Reed v Reed*, 265 Mich App 131, 166; 693 NW2d 825 (2005). See also *In re Adams Estate*, 257 Mich App 230, 237; 667 NW2d 904 (2003) ("it is improper to award attorney fees on general equitable principles.").

Next, Secura argues that we can affirm the trial court's award of attorney fees based on Thomas's—and, for that matter, Swingler-Reid's—unlawful or fraudulent conduct. While we are to narrowly construe exceptions to the general rule that attorney fees are not recoverable, this Court has recognized an exception to the rule for situations "where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct." *Spectrum Health v Grahl*, 270 Mich App 248, 253; 715 NW2d 357 (2006) (citation and quotation marks omitted). See also *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 286; 761 NW2d 761 (2008). Again, we note that the trial court made no findings as to whether an award of attorney fees was appropriate in light of this exception. As such, we decline to rule on this matter. See *Gentris*, 297 Mich App at 364. We also make no comment with regard to whether the conduct in this case would rise to the level of "fraudulent or unlawful" conduct present in cases such as *Kircher*.

---

[5] We recognize that Swingler-Reid is not a party to this appeal; however, because the errors in the trial court's damages award affect the entirety of the award, we vacate the entire award, including those portions that affect Swingler-Reid.

## B. REPAYMENT OF PIP BENEFITS

Next, Thomas argues that the trial court erred by requiring her to make restitution to Secura for the PIP benefits[6] it paid in connection with the accident in Georgia. However, this issue is not properly before the Court because, aside from the fact that it was not identified in her statement of the questions involved, Thomas failed to cite any applicable authority supporting her position and did little more than raise the issue in a cursory fashion. See MCR 7.212(C)(5) and (C)(7). "[A]ppellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority." *VanderWerp v Plainfield Chart Tp*, 278 Mich App 624, 633; 752 NW2d 479 (2008). Thus, she did not properly present this issue for appellate review and we deem it abandoned.

## C. JOINT AND SEVERAL LIABILITY

Lastly, Thomas argues that the trial court erred by holding her and Swingler-Reid jointly and severally liable for the full award. Secura urges us not to consider this issue, contending that Thomas failed to raise the issue before the trial court. We note that Thomas raised this issue at the May 6, 2014 hearing, as she argued that she should not be held liable for Swingler-Reid's conduct. We also agree with Thomas's contention that she should not be held jointly and severally liable for Swingler-Reid's conduct pertaining to the Oakland County PIP/UIM case with which Thomas had no involvement. The trial court granted the remedy of restitution, based on its decision to rescind the policy. While a contract—such as the insurance policy at issue—can provide for joint and several liability, see *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 641; 734 NW2d 217 (2007), we are unable to find any basis in the policy for imposing joint and several liability in the instant case. Nor has Secura pointed to any provision of the policy indicating that Thomas—who is not a party to the contract but can best be described as a third-party beneficiary with regard to her claims under the policy—should be jointly and severally liable for restitution on a contract for conduct having nothing to do with her or with her status as a third-party beneficiary.[7]

---

[6] In her brief on appeal, Thomas acknowledged that these are PIP benefits. Yet, in her reply brief, she contends that Secura paid UIM benefits to her. As Secura correctly argues, the record shows that any benefits paid to Thomas were undeniably PIP benefits, not UIM benefits.

[7] We note that when the trial court granted summary disposition on the issue of damages, it indicated that its earlier grant of summary disposition on the merits was based, not only on its ruling that rescission was warranted, based on the terms of the policy itself, but on all of Secura's claims, including its tort claims. As Thomas accurately points out, the imposition of joint and several liability cannot be upheld by simply pointing to Secura's tort claims. As an initial matter, the trial court never made any rulings as to the tort claims; rather, its first summary disposition ruling only pertained to whether rescission of the policy was warranted *under the terms* of the policy. Second, and more importantly, even assuming the trial court had granted summary disposition on the tort claims, our Legislature has abolished joint and several liability in certain

## IV. CONCLUSION

In sum, although we affirm the trial court's grant of summary disposition to Secura with regard to whether it was permitted to rescind the policy based on the terms of the policy itself, we vacate all aspects of the trial court's damages award except for its restitution award to Secura for the PIP benefits it paid in connection with the accident in Georgia. On remand, if the trial court decides to award attorney fees, it must state its basis for doing so on the record, in accordance with our opinion.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael F. Gadola

---

tort actions, which would include the torts alleged in this case. See MCL 600.2956; *Laurel Woods*, 274 Mich App at 641.