# STATE OF MICHIGAN

# COURT OF APPEALS

LANCIA JEEP HELLAS S.A.,

Plaintiff-Appellant,

v

CHRYSLER GROUP INTERNATIONAL LLC,
FIAT S.P.A., and FIAT GROUP AUTOMOBILES
S.P.A.,

Defendants-Appellees.

UNPUBLISHED
March 24, 2016

No. 329481
Oakland Circuit Court
LC No. 2014-142918-CZ

Before: K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

In this contract dispute, plaintiff, Lancia Jeep Hellas S.A., appeals by leave granted[1] the trial court's opinion and order granting partial summary disposition to defendants[2] under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). For the reasons set forth in this opinion, we affirm.

## A. FACTS

This case arises out of a Settlement Agreement reached by the parties in a prior action, which was ultimately dismissed with prejudice pursuant to the terms of the Settlement Agreement. Because this contractual dispute involves the trial court's partial grant of summary disposition under MCR 2.116(C)(8)—without consideration of documentary evidence—the pertinent "facts" are largely comprised of the allegations in plaintiff's complaint.

According to its complaint, plaintiff is a Greek business organization, which formerly distributed Chrysler, Dodge and Jeep branded vehicles in Greece. As of May 2010, plaintiff had

---

[1] *Lancia Jeep Hellas SA v Chrysler Group International LLC*, unpublished order of the Court of Appeals, entered October 29, 2015 (Docket No. 329481).

[2] During the pendency of this action, the three defendant business organizations were effectively extinguished via merger. Nevertheless, for the sake of clarity, we refer to those organizations and their successors in interest collectively as "defendants."

-1-

distributed the vehicles for nearly 20 years. In April 2010, defendants announced that many Chrysler products would be rebranded and marketed on an exclusive basis under the Lancia brand. One month later, defendants sent a letter to LJH terminating LJH as an importer and distributor for Chrysler and Dodge effective May 31, 2011. In response, LJH instituted the prior action for, *inter alia*, breach of contract.

Ultimately, the parties executed a lengthy Settlement Agreement, in which they agreed to dismissal of the prior action with prejudice. The Settlement Agreement contained the following release clause wherein LJH agreed to release its claims against defendants "arising out of or relating to" the prior action, with the following exceptions:

> (l) any potential warranty or product liability claims for vehicles or parts sold prior to the date of this Agreement, (2) any claims, demands, actions, causes of action of any nature whatsoever, at law or in equity, related to the negotiation or breach of this Agreement, or (3) any claims, demands, actions, causes of action of any nature whatsoever, at law or in equity, relating to future business operations.

The Settlement Agreement also contained a merger/integration clause which provided as follows:

> 9.1 <u>Entire Understanding</u>. This Agreement with its Exhibits shall be deemed to contain the final, complete and exclusive agreement and understanding between the parties hereto and their Affiliates in respect of the transactions contemplated hereby and thereby and supersedes and replaces all prior agreements, arrangements, negotiations, representations and understandings among the parties hereto and their Affiliates, actual, proposed or otherwise, whether written or oral, concerning the subject matter hereof and thereof. The terms of this Agreement shall control over the terms of any of the Exhibits hereto.

In return, defendants agreed, in pertinent part, to appoint plaintiff "as a distributor for Greece to sell and resell new Lancia branded vehicles and relevant parts, and to service Lancia branded vehicles in the Greek market and sell relevant parts," subject to the "pricing terms and policies generally applied by FGA [Fiat] to its distributors." Under the terms of the agreement, plaintiff retained the rights to distribute Jeep branded vehicles and parts and to service existing Chrysler and Dodge vehicles in Greece. Defendants also agreed to appoint plaintiff "as a dealer in two locations in Athens to sell and service Fiat, Alfa Romeo, and Fiat Professional branded vehicles and relevant parts, and as a dealer in one location in Athens to sell and service Abarth branded vehicles and relevant parts."

The Settlement Agreement incorporated a "Lancia Distribution Agreement," which governed the terms by which plaintiff would distribute Lancia vehicles in Greece. The final version of the Lancia Distribution Agreement set forth terms under which LJH would distribute certain Lancia "Contract Vehicles." However, the Lancia Distribution Agreement also contained a clause wherein defendants retained the rights to alter, modify, stop production of, or withdraw from the market any of the Contract Vehicles or any "derivative" of the Contract Vehicles.

On December 26, 2014, plaintiff filed the instant action against defendants alleging several causes of action, including fraud and breach of the Settlement Agreement based on breach of the duty of good faith and fair dealing. Plaintiff alleged that defendants represented during the settlement negotiations that they intended to produce a full line of Lancia vehicles and that the Lancia brand would be expanded with eight new models from 2011 through 2014. Plaintiff further alleged that, in deciding whether to enter into the Settlement Agreement, it considered the right to distribute the Lancia product line to be the primary compensation for defendants' termination of the Chrysler distribution agreement with plaintiff. Plaintiff asserted that it relied on defendants' representations and that it would not have agreed to distribute Lancia products in Greece absent defendants' representations that the Lancia line of products would be expanded and improved. Plaintiff alleged that defendants did not expand and improve the Lancia line and that, contrary to defendants' representations, they never intended to introduce an expanded line of Lancia vehicles. According to plaintiff, several of the promised models should have been far along in development at the time of the representations because the development process in the automobile industry is typically two to three years. Plaintiff alleged that the fact that not one of the promised new models ever entered the market indicates that they were never being developed. Plaintiff further asserted that it relied on defendants' representations and began preparing its distribution network for the promised Lancia line, spending millions of Euros. Finally, plaintiff alleged that in 2014 it became clear that defendants intended to discontinue the Lancia brand in every European country except Italy.

Defendants filed a motion for partial summary disposition pursuant to MCR 2.116(C)(8), arguing, in relevant part, that the Settlement Agreement contained an integration clause and contained no representations regarding developing an expanded line of Lancia models. Defendants maintained that the integration clause nullified any alleged representation that defendants would develop an expanded line of Lancia automobiles. Defendants asserted that if it was important to plaintiff that defendants develop a full line of Lancia vehicles, plaintiff should have ensured that the alleged promise was included in the Settlement Agreement. Defendants further argued that the Settlement Agreement gave defendants complete control regarding the products that plaintiff was entitled to sell and allowed defendants to withdraw any vehicle from the market. Finally, defendants argued that Michigan does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing.

In response, plaintiff argued that defendants conveniently neglected to mention article 2.2, i.e., the release clause, of the Settlement Agreement, which explicitly preserved plaintiff's right to file suit regarding claims related to the negotiation of the Settlement Agreement. Plaintiff asserted that the plain language of the release clause preserved its fraud claim and defeated defendants' argument regarding integration. Plaintiff also argued that Michigan law recognizes a breach of contract claim based on the violation of the duty of good faith and fair dealing.

Following oral argument, the trial court granted defendants' motion and dismissed several counts of plaintiff's complaint. Only count 1 (fraud) and count 2 (breach of the duty of good faith and fair dealing) are at issue in this appeal. With respect to plaintiff's fraud claim, the trial court explained:

Here, [plaintiff] is claiming that it was fraudulently induced to enter into the settlement agreement based on Defendants' representation that they intended to develop a complete line of Lancia vehicles. Although Lancia is not claiming that the parties entered into a collateral agreement, it is claiming that it relied on Defendants' promises to perform obligations not included in the settlement agreement. Thus, this case is nearly indistinguishable from [*Hamade v Sunoco, Inc*, 271 Mich App 145; 721 NW2d 233 (2006)], where the plaintiff also alleged fraudulent inducement based on his reliance on certain promises Defendants made before they entered into the agreement. Because the integration clause renders [plaintiff's] reliance on Defendants' pre-contractual promises unjustifiable, the fraud claim fails as a matter of law.

The court also reasoned that the release clause did not save plaintiff's fraud claim, explaining:

If the Court were to conclude that the release language allows [plaintiff] to pursue damages based on Defendants' alleged pre-contractual promises, that interpretation would render the integration clause meaningless. Contrary to [plaintiff's] claim, the integration clause does not negate the release language. [Plaintiff] still has the right to pursue a claim based on the settlement negotiations, provided that the claim is not barred by the integration clause. Because [plaintiff's] fraud claim based on alleged pre-contractual promises of performance is barred by the integration clause, it cannot be salvaged by the release language. For all of these reasons, Defendants are entitled to summary disposition of [plaintiff's] Count 1 claiming fraud.

Regarding plaintiff's breach of contract claim, the court stated that although it may imply a covenant of good faith and fair dealing where one party to a contract has complete discretion regarding how to perform its obligations, plaintiff failed to cite to any portion of the Settlement Agreement that gave defendants "unfettered discretion on how to perform their obligations."

The court proceeded to grant defendants' motion for summary disposition in its entirety. Subsequently, this Court granted plaintiff's motion for immediate consideration and its application for leave to appeal, but denied plaintiff's motion for preemptory reversal.[3]

## B. STANDARDS OF REVIEW

On appeal, plaintiff argues that the trial court erred in granting defendant's motion for summary disposition.

---

[3] *Lancia Jeep Hellas SA v Chrysler Group International LLC*, unpublished order of the Court of Appeals, entered October 29, 2015 (Docket No. 329481). LJH later filed a motion to expedite the consideration of this appeal, which this Court also granted. *Lancia Jeep Hellas SA v Chrysler Group International LLC*, unpublished order of the Court of Appeals, entered November 20, 2015 (Docket No. 329481).

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Johnson v Pastoriza*, 491 Mich 417, 428; 818 NW2d 279 (2012). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Id*. at 434-435. A motion is properly granted under MCR 2.116(C)(8), where "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant . . . the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. To the extent that our review requires interpretation and application of the Settlement Agreement, "[t]he existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

"A party may not support a motion under subrule (C)(8) with documentary evidence[.]" *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010). However, under MCR 2.113(F), "[w]hen an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint." *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007). "Accordingly, the written contract becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8)." *Id.*

In this case, the parties failed to attach to their respective pleadings the written instruments on which their claims and defenses in this action are based, and they also failed to allege facts sufficient to satisfy the exceptions listed under MCR 2.113(F)(1)(a) or (b). Nevertheless, because the parties should have done so, and in the interest of judicial economy, we will consider the written instruments at issue in this case as part of the pleadings for purposes of review under MCR 2.116(C)(8).

## C. ANALYSIS

### I. FRAUDULENT INDUCEMENT

A settlement agreement is a contract and is interpreted as such. *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010) (quotation marks and citation omitted). If contractual language is unambiguous, it must be interpreted in accordance with its plain meaning. *Id*. "[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

A claim of fraud in the inducement may arise "where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006). "Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 640; 534 NW2d 217 (1995).

Plaintiff argues that it was fraudulently induced to enter into the Settlement Agreement by defendants' pre-settlement representations that they would produce an expanded line of

-5-

Lancia vehicles, including eight new models. Defendants, on the other hand, argue that the Settlement Agreement did not contain any provisions regarding the alleged representations and rely on the following integration, or merger, clause:

> 9.1 <u>Entire Understanding</u>. This Agreement with its Exhibits shall be deemed to contain the final, complete and exclusive agreement and understanding between the parties hereto and their Affiliates in respect of the transactions contemplated hereby and thereby and supersedes and replaces all prior agreements, arrangements, negotiations, representations and understandings among the parties hereto and their Affiliates, actual, proposed or otherwise, whether written or oral, concerning the subject matter hereof and thereof. The terms of this Agreement shall control over the terms of any of the Exhibits hereto.

The central issue, therefore, is whether, the integration clause barred the introduction of parol evidence such that plaintiff could not prove that it justifiably relied on defendants' alleged pre-settlement representations. To resolve this issue, we turn to *Hamade*, 271 Mich App 145.

In *Hamade*, the plaintiff owned a Sunoco gas station. *Id*. at 149. In 1997, the plaintiff sought to enter into a new franchise agreement with Sunoco; however, Sunoco insisted that the plaintiff make numerous improvements to his existing station before it would agree to enter into a new franchise agreement. *Id*. After making the requested improvements, the plaintiff began negotiations with Sunoco for a new franchise agreement. *Id*. According to the plaintiff, during the negotiations he requested that Sunoco include a provision in the new agreement that would prevent Sunoco from approving a competing station within a certain distance from the plaintiff's station. *Id*. at 149-150. The plaintiff alleged that, before he signed the new agreement, a Sunoco representative assured him that Sunoco would never approve another station near the plaintiff's station. *Id*. at 150. However, three years after the plaintiff signed the new franchise agreement Sunoco approved a competing Sunoco gas station approximately one mile from the plaintiff's station. *Id*. The plaintiff sued Sunoco alleging, *inter alia*, that Sunoco fraudulently induced him to enter the new franchise agreement. *Id*. at 151, 166. The trial court dismissed the plaintiff's fraud claims on grounds that the franchise agreement's merger clause barred parol evidence to support the claims; the plaintiff appealed. *Id*. at 152.

On appeal, the issue was whether the plaintiff could introduce parol evidence to prove that he was fraudulently induced into entering the franchise agreement, which contained a merger clause. *Id*. at 166-168. The *Hamade* Court explained how the parol evidence rule operates in the context of a merger clause as follows:

> Parol evidence is generally admissible to demonstrate fraud, which, if proved, would render the contract voidable by the innocent party.

> 'However, in the context of an integration clause, which releases all antecedent claims, only certain types of fraud would vitiate the contract.' 3 Corbin, Contracts, § 578, p. 411, states in part:

> 'To establish fraud, it is not sufficient merely to show that the writing states that there was no antecedent agreement when the fact is that there had been

one. If by artifice or concealment, one party induces the other to suppose that the antecedent agreement is included in the writing, or to forget that agreement and to execute an incomplete writing, while describing it as complete, the written provision may be voidable on the ground of fraud.'

In other words, while parol evidence is generally admissible to prove fraud, fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract. Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause. 3 Corbin, Contracts, § 578. [*Hamade*, 271 Mich App at 169-170, quoting *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 503; 579 NW2d 411 (1998).]

Relying on *UAW-GM*, the *Hamade* Court explained that the plaintiff's fraud claim was based "on an oral representation" and therefore, "[b]ecause this representation was expressly nullified by the integration clause, if the integration clause is valid, fraud based on this representation will have no effect on the validity of the contract. Thus, plaintiff must demonstrate that the fraud in question invalidated the integration clause itself." *Hamade*, 271 Mich App at 170. This Court concluded that the plaintiff could not demonstrate fraud "that would invalidate the integration clause or otherwise the entire contract," explaining:

Hamade knew that the agreement he signed did not contain a clause granting him an exclusive territory. His only claim on appeal is that he was led to believe that he did not need such a clause. Furthermore, the [franchise] Agreement actually contains an express term applicable to Sunoco's decision to authorize another Sunoco station near Hamade's station. Pursuant to § 3.24(a)(2), Hamade warranted to Sunoco that

'[t]here have been no promises, claims or representations made to [Hamade] by [Sunoco] or its representatives of any kind, including but not limited to promises (i) concerning price, quality or quantity of products and services sold or supplied by [Sunoco]; (ii) the condition, future repairs to or replacement of Loaned Equipment; (iii) *present or future market conditions or competitive activities* other than as set forth in this Agreement or any other written documents signed by the parties as a part of the Franchise relationship.

\* \* \*

Plaintiff failed to demonstrate fraud that would invalidate the integration clause or otherwise invalidate the entire contract. Furthermore, because the valid integration clause nullified all prior and contemporaneous agreements, understandings, representations, and warranties, plaintiff may not use parol evidence to contradict the explicit terms of the integration clause . . . Likewise, the valid integration clause renders reliance on the representation unreasonable as a matter of law. [*Hamade*, 271 Mich App at 170-171.]

In contrast to *Hamade*, in *Custom Data v Preferred Capital*, 274 Mich App 239, 733 NW2d 102 (2006), this Court rejected the defendant's argument that an integration clause barred the plaintiff from introducing evidence to prove fraud. In *Custom Data*, the plaintiff entered into telecommunications service and equipment rental agreements (ERAs) with Norvergence. *Id*. at 240-241. Norvergence then assigned some of the ERAs to the defendant, Preferred Capital. *Id*. According to the plaintiff, Norvergence was unable to perform the promised services, yet Norvergence and its assigns sought to collect on the contracts. *Id*. at 241. The plaintiff commenced suit, alleging, *inter alia*, fraud in the inducement. *Id*. During discovery, the plaintiff produced "uncontroverted evidence that the agreement . . . [was] the result of a fraudulent scheme by Norvergence to finance the services that Norvergence was promising to provide to Plaintiff and others," which "invalidates the *entire contract* including the merger clause." *Id*. at 244 (emphasis added). The circuit court explained:

> 'The Court is satisfied that Plaintiff's reliance upon the representations made by Norvergence was reasonable, and that the UCC and the provisions regarding rejection of goods does [sic] not apply to the case at hand. Consequently, the merger clause in the equipment rental agreements is insufficient to prevent Plaintiff from introducing evidence of fraud, and Plaintiff's motion for summary disposition to void the contract should be granted.' [*Custom Data*, 274 Mich App at 244.]

On appeal, Norvergence argued that the plaintiff's reliance on pre-contract representations was "patently unreasonable" because the representations were not contained within the written ERAs, which contained merger clauses. *Id*. at 242. This Court rejected Norvergence's argument, explaining:

> plaintiff presented unrefuted evidence in support of its motion for partial summary disposition that Norvergence's statements regarding its ability to provide plaintiff with a total telecommunications and products package induced plaintiff to enter into the agreement with Norvergence . . . Defendant came forward with no evidence to refute that Norvergence made these representations, that these representations induced plaintiff to enter into a contract that included the ERAs for the matrix boxes (those at issue were assigned to defendant by Norvergence), that the matrix boxes were never installed and never functioned, and that Norvergence knew at the time it made the representations to plaintiff that it was incapable of providing the services promised. Defendant's argument thus fails. [*Id*. at 245.]

In this case, plaintiff contends that *Custom Data* is controlling and that the trial court erred in relying on *Hamade*. Plaintiff's argument is unpersuasive. The critical difference that distinguishes this case from *Custom Data* is that, contrary to the plaintiff in *Custom Data*, in this case, plaintiff did not seek to void the merger clause or the Settlement Agreement in its entirety.[4]

---

[4] Indeed, it its brief on appeal, plaintiff states that it "stands on the agreement and brings an action for damages."

Rather, like in *Hamade*, plaintiff seeks to recover damages and enforce the Settlement Agreement. As previously noted, "when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would *invalidate the merger clause itself*, i.e., fraud relating to the merger clause *or fraud that invalidates the entire contract* including the merger clause." *Hamade*, 271 Mich App at 169-170 (quotation marks and citations omitted, emphasis added). In this case, like the plaintiff in *Hamade*, plaintiff's claim is based on the assertion that the parties had an agreement that was not within the integrated terms of the Settlement Agreement—i.e. that defendants would develop a full-line of Lancia vehicles. Plaintiff does not seek to void the agreement in its entirety, but rather seeks to add a term to the agreement guaranteeing that defendant will develop a full-line of Lancia vehicles and then recover for defendants' breach of that term. Because the Settlement Agreement contained a merger clause, this claim failed as a matter of law. *Hamade*, 271 Mich App at 167-170.

Moreover, the Settlement Agreement, by incorporation, included a clause that provided defendants discretion to withdraw all contract vehicles from the market. Similar to the plaintiff in *Hamade*, where the franchise agreement provided Sunoco with the authority to approve another gas station, here, defendants reserved the right to withdraw any and all contract vehicles from the market. Plaintiff cannot now introduce parol evidence to counter those plain terms. Because plaintiff has not alleged facts that would void the merger clause or the Settlement Agreement in its entirety, like in *Hamade*, plaintiff's fraud claim fails as a matter of law. *Id*.; *UAW-GM*, 228 Mich App at 503.

Plaintiff argues that the release clause preserved its right to pursue claims related to the negotiation of the Settlement Agreement. The release clause provided as follows:

> [Plaintiff] releases and forever discharges [defendants] and their Affiliates . . . from any and all claims . . . whatsoever, in law or in equity, that it had, now has or may have in the future, whether known or unknown . . . including without limitation, all claims arising out of or relating to the Litigation, the Chrysler/[Plaintiff] General Distributor Agreement, and/or the notice of termination, effective May 31, 2011, of the Chrysler/[Plaintiff] General Distributor Agreement, *except for . . . (2) any claims, demands, actions, causes of action of any nature whatsoever, at law or in equity, related to the negotiation or breach of this Agreement . . . .*

Here, even if this language preserved plaintiff's right to bring a claim based on the negotiation, as discussed above, plaintiff's claim failed as a matter of law. In other words, the fact that LJH's alleged claim for fraud in the inducement is not barred by the release clause has no bearing on whether that claim is, under MCR 2.116(C)(8), one on which recovery can be granted. Accordingly, the trial court properly held that the release clause did not save plaintiff's claim, albeit it did so for different reasons. *Gleason v Mich Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.")

In short, plaintiff's fraudulent inducement claim was "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery" and summary disposition as to the claim was proper under MCR 2.116(C)(8). *Maiden*, 461 Mich at 119.

-9-

## II. BREACH OF CONTRACT

Plaintiff also argues that the trial court erroneously dismissed its claim of breach of contract based on defendants' breach of the duty of good faith and fair dealing. This argument lacks merit.

Under the common law, it is well-settled that, "[u]nlike some other jurisdictions, Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *In re Leix Estate*, 289 Mich App 574, 591; 797 NW2d 673 (2010) (quotation marks and citations omitted). The same is true regarding the duty of good faith imposed, under MCL 440.1304, on "[e]very contract or duty" that is governed by the UCC. "[W]hile the obligation of good faith under the UCC may affect the construction and application of UCC provisions governing particular commercial transactions in various situations, it has no life of its own that may be enforced by an independent cause of action." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 133; 839 NW2d 223 (2013).

Nevertheless, plaintiff argues that because defendants had discretion regarding development of the Lancia line, there was an implied duty of good faith and fair dealing that attached to that discretion. This argument is not persuasive.

This Court has recognized that a covenant of good faith and fair dealing may attend contracts that make the manner of one party's performance "a matter of its own discretion." *Burkhardt v City Nat'l Bank of Detroit*, 57 Mich App 649, 652; 226 NW2d 678 (1975). Applying Michigan law, the Fifth Circuit Court of Appeals[5] has explained that "[t]he implied covenant of good faith and fair dealing essentially serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms." *Hubbard Chevrolet Co v Gen. Motors Corp*, 873 F2d 873, 876-877 (CA 5, 1989). However, there is no implied duty of good faith where the parties have "unmistakably expressed their respective rights," because the implied duty "cannot override express contract terms." *Stephenson v Allstate Ins Co*, 328 F3d 822, 827 (CA 6, 2003).

In this case, the Settlement Agreement did not omit terms, provide ambiguous terms, or defer decision on a particular term. *Hubbard*, 873 F2d at 876-877. As noted above, the integration clause provided that the agreement contained all of the terms and conditions of the contract. Furthermore, the express terms of the contract provided defendants the option to withdraw contract vehicles from the Greek market. Accordingly, plaintiff cannot argue that an implied duty of good faith overrides these plain terms. *Stephenson*, 328 F 3d at 827; see also *Hubbard*, 873 F 3d at 877-878 (holding that there was no implied duty of good faith and fair dealing where the dealer franchise agreement "gave GM the authority to approve or disapprove relocation for its own reasons, and thus set out the limits of what the contract requires of these parties.")

---

[5] "Though not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues." *Fed Home Loan Mtg Ass'n v Kelley (On Reconsideration)*, 306 Mich App 487, 494 n 7; 858 NW2d 69 (2014).

In sum, the trial court did not err in dismissing plaintiff's breach of contract claim based on defendants' breach of the duty of good faith and fair dealing. *Maiden*, 461 Mich at 119; MCR 2.116(C)(8).

Affirmed. Defendants having prevailed, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello