*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN THOMAS VAYKO,

　　　　　　Plaintiff-Appellant,

v

JENNIFER TANOURY,

　　　　　　Defendant-Appellee.

UNPUBLISHED
February 15, 2024

No. 366503
Washtenaw Circuit Court
LC No. 22-001638-CZ

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals as of right the order of the Washtenaw Circuit Court granting defendant summary disposition of plaintiff's claims pursuant to MCR 2.116(C)(8). On appeal, plaintiff contends the trial court erred in finding plaintiff's amended complaint failed to state a claim upon which relief can be granted. We affirm.

## I. FACTS

Plaintiff filed his complaint in the circuit court alleging breach of contract, and alleging that defendant had violated various criminal statutes including MCL 750.174(4) (embezzlement by agent) and MCL 750.249 (uttering and publishing). Specifically, the complaint asserted plaintiff had loaned defendant $7,430 "on the return guarantee of $28,000 via various Bitcoin ventures such as Bitcoin mining in addition to Bitcoin Casino winnings, and return from a Walmart MoneyCard from Caesar SportsPlay." Plaintiff further alleged that in partial repayment of this loan, defendant presented plaintiff with a check for $3,000, which plaintiff alleged was fraudulent and caused plaintiff's bank to freeze his account.

Defendant filed an answer asserting that no contract had existed between the parties and asserted other defenses. Defendant also filed a motion for a more definite statement pursuant to MCR 2.115(A), contending the allegations in plaintiff's complaint were vague and failed to provide defendant reasonable notice of the claims being brought against her. Plaintiff subsequently filed an amended complaint, adding MCL 600.2919a (allows treble damages for embezzlement/conversion) and MCL 600.5807 (setting a 6-year statute of limitations for breach of contract) as additional bases for relief. Plaintiff requested actual and punitive damages.

Plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(9) (opposing party has failed to state a valid defense) and MCR 2.116(C)(10) (no genuine issue of material fact), arguing defendant had not asserted a valid defense against her obligation to fulfill their agreement "to the specific amount of $28,000." Defendant also filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10), contending plaintiff's amended complaint failed to state a claim upon which relief can be granted. The trial court heard oral argument on both motions. Plaintiff argued a valid contract existed between the parties, and defendant's failure to repay plaintiff constituted a breach. Defendant argued that no contract existed between the parties, and alternatively if a contract did exist, it was unenforceable because contracts for gambling are void. The trial court denied plaintiff's motion and granted defendant's motion for summary disposition under MCR 2.116(C)(8), reasoning "the plaintiff has failed to… state a valid claim for relief, pursuant to [MCL] 750.174, 750.249, 600.5807, or [600.2919a], as cited by plaintiff in the amended complaint." The trial court dismissed the complaint and plaintiff now appeals.

## II. BREACH OF CONTRACT

Plaintiff argues the trial court erred in finding his claims unenforceable as a matter of law. Plaintiff asserts he submitted evidence in the form of text messages that establish a contract existed between the parties. We disagree.

### A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. (emphasis omitted). Granting a motion under (C)(8) is warranted when "[t]he opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil*, 504 Mich at 160; MCR 2.116(G)(5). If the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery[,]" then summary disposition should be granted. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "A mere statement of a pleader's conclusions and statements of law, unsupported by allegations of fact, will not suffice to state a cause of action." *Varela v Spanski*, 329 Mich App 58, 79; 941 NW2d 60 (2019). Only factual allegations, not legal conclusions, are to be taken as true under MCR 2.116(C)(8). See *Lansing Sch Ed Assoc, MEA/NEA v Lansing Sch Dist Bd of Ed (On Remand)*, 293 Mich App 506, 519; 810 NW2d 95 (2011).

The existence and interpretation of a contract are questions of law that are also reviewed de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). When an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint, such that the contract becomes part of the pleadings a court can consider on a motion for summary disposition under MCR 2.116(C)(8). *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

### B. ANALYSIS

Plaintiff's complaint does not state facts that show a contract existed between the parties. The creation of a contract requires an offer and acceptance. *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015). An offer is "the manifestation of willingness to enter into a bargain …." *Kloian*, 273 Mich App at 453. "Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Pakideh v Franklin Commercial Mortg Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). "Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Clark,* 309 Mich App at 394, quoting *Kloian*, 273 Mich App at 452-453.

"A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Michigan v State of Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015) (citation omitted). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *Id*. quoting *Hammel v Floor*, 359 Mich 392, 400; 102 NW2d 196 (1960).

While plaintiff states that a contract existed between the parties, he has not pled facts to show there was an offer and acceptance. Plaintiff's amended complaint does not describe any sort of offer made by either plaintiff or defendant, nor does it state there was acceptance of an offer. Without an offer and acceptance, we cannot find that either party manifested a willingness to enter into a contract.

Further, plaintiff did not attach any written contract to his complaint. Instead, he purports that the agreement was reached in text message conversations between the parties. Plaintiff submitted these texts in his Exhibit E, which was filed with plaintiff's reply to defendant's answer to the amended complaint. Because a reply to an answer is considered part of the "pleadings" in a case, MCR 2.110(A)(6), we can consider these text messages when reviewing defendant's motion for summary disposition under MCR 2.116(C)(8). See *Laurel Woods Apartments*, 274 Mich App at 635.

The text messages contained in Exhibit E are insufficient to establish there was an offer and acceptance. Plaintiff alleges that the following text exchanges are sufficient to establish a valid contract:

> 1) "Plaintiff: 'For $10,600'; Defendant: 'If you send $150" (See page 611);

> 2) "Defendant: '$100 for $2,000 so 12,950; I alrady [sic] cashed out 9950'" (See Page 639);

> 3) 'Plaintiff: '$160 for $27,000'; Defendant: 'Yah'" (see Page 753);

> 4) "Defendant: 'Dude 6,000 is not even half of what I'm giving you when it comes not to mention my 2500 check coming tomorrow or Monday as I spoke with them'" (See page 870);

> 5) "Defendant: 'Rely on my check til 28,000 come in, its to good to be true overnight but believe it will come soon. It's a good thing I have my check, but I can't give all to you. You only gave me 300…but if you can give me a tad more til

-3-

it comes in which could be this weekend or latest next week. I can see my mail come in a week ahead of time.'" (See page 876);

6) "Defendant: 'Just so you know I wouldn't just leave you in debt for 7k…I told you case scenario I will help pay it back as much as I can, but you don't need leave me with the cold shoulder. I understand what position your in especially before holidays, I get it. I would be stressed too…but we are supposed to be there for each other not just ignore. During the wait I offered good deals on stuff I had, told you could have them to sell for profit while we wait and all I ask is for you to help me a little. It's gonna be a tough wait, but like I said…. I have experience in Bitcoin shit, the fact that not only is it down right now, one of the biggest exchange markets is going bankrupt so it's gonna be a while' (See page 922).

An offer and acceptance cannot be discerned from these communications. Plaintiff's statement, "For $10,000" cannot be construed as an offer because it does not show a willingness to enter into a bargain. *Kloian*, 273 Mich App at 453. And defendant's reply, "If you send $150," does not establish acceptance because it is ambiguous. The messages establish neither the purpose of the purported $10,000 payment to defendant nor the purpose of the $150 payment defendant appears to suggest or request in reply. Nowhere in the text conversations does a valid offer and acceptance appear. Because we are left wondering what the essential terms of the agreement are, there is no mutual assent or meeting of the minds as is required for a valid contract. See *Clark,* 309 Mich App at 394.

## III. CONTRACTS FOR GAMBLING

The trial court did not specify the reason it found plaintiff's civil claims to be unenforceable as a matter of law. It reasoned explicitly only that, "Plaintiff's claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery as required under MCR [2.116](C)(8)." If the trial court accepted defendant's alternative argument that contracts for gambling are unenforceable under *Int'l Recovery Systems* and MCL 600.2939(3), we affirm as to this basis as well.

## A. STANDARD OF REVIEW

Questions of statutory interpretation are reviewed de novo as questions of law. *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). "When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted." *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). "Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Id*. We give undefined terms in a statute their plain and ordinary meanings, and may consult dictionary definitions to do so. *Id*.

## B. ANALYSIS

"Courts in our state have long held that, as a matter of public policy, contracts made in furtherance of gambling are unenforceable, and loans made for gambling purposes cannot be recovered." *Int'l Recovery Systems, Inc v Gabler*, 208 Mich App 49, 51; 527 NW2d 20 (1994), rev'd on reh 210 Mich App 422, 423-424; 527 NW2d 20 (1995).[1] This conclusion is supported by the language of MCL 600.2939(3), which provides:

>       (3) All notes, bills, bonds, mortgages, or other securities or conveyances whatever, in which the whole or any part of the consideration, shall be for any money or goods won by playing at cards, dice, or any other game whatever, or by betting on the sides or hands of such as are gaming, or by any betting or gaming whatever, or for reimbursing or repaying any moneys knowingly lent or advanced for any gaming or betting, *shall be void and of no effect*, as between the parties to the same, and as to all persons, except such as shall hold or claim under them in good faith, and without notice of the illegality of such contract or conveyance. [MCL 600.2939(3) (emphasis added)].

"It is clear that gambling is contrary to public policy in Michigan, aside from those narrowly circumscribed exceptions created by the Legislature." *Int'l Recovery Systems, Inc (On Rehearing)*, 210 Mich App at 423. One example of an exception created by the Legislature is the Gaming Act, which governs legalized non-Indian casino gambling in Detroit. See *Parise v Detroit Entertainment, LLC*, 295 Mich App 25, 28; 811 NW2d 98 (2011). As such, if an exception does not apply, gambling debts are unenforceable in our courts. *Id*. See also *Gibson v Martin*, 308 Mich 178; 13 NW2d 252 (1944).

Under *Int'l Recovery Systems*, "loans made for gambling purposes cannot be recovered." 208 Mich App at 51. While plaintiff argues that only a portion of his money was to be used in gambling, even accepting that as true the statute forbids, "All notes, bills, bonds, mortgages, or other securities or conveyances whatever, *in which the whole or any part of the consideration*, shall be… for reimbursing or repaying any moneys knowingly lent or advanced for any gaming or betting …." MCL 600.2939(3). Therefore, even if only a portion of the money given as consideration was used for gambling, it is void under MCL 600.2939(3).

Plaintiff argues that MCL 600.2939(3) does not apply to his claim because it applies to "notes, bills, bonds, mortgages, or other securities or conveyances whatever." Plaintiff contends that because this contract involved cryptocurrency, which he claims is equivalent to money, MCL 600.29239(1) should apply instead because that pertains to loss of "any money or goods." MCL 600.2939(1) provides:

>       (1) In any suit brought by the person losing any money or goods, against the person receiving the same, when it appears from the complaint that the money

---

[1] The court enforced the contract on rehearing because it was made in Nevada where gambling is legal, and plaintiff obtained a judgment from a Nevada court that the Michigan court must honor under the Full Faith and Credit Clause though repugnant to public policy against gambling and loans made for gambling purposes. *Int'l Recovery Systems, Inc*, 210 Mich App at 424.

or goods came to the hands of the defendant by gaming, if the plaintiff makes oath before the court in which such suit is pending, that the money or goods were lost by gaming with the defendant as alleged in the complaint, judgment shall be rendered that the plaintiff recovered damages to the amount of the said money or goods, unless the defendant makes oath that he did not obtain the same, or any part thereof by gaming with the plaintiff; and if he so discharges himself, he shall recover of the plaintiff his costs; but the plaintiff may at his election, maintain and prosecute his action according to the usual course of proceedings in such actions at common law.

Plaintiff is misguided. While cryptocurrency may be equivalent to money, plaintiff did not lose the money "by gaming with the defendant." Instead, plaintiff allegedly lent money to the defendant that she would use in gambling. A "note" is defined as "a written promise by one party to pay money to another party." *Black's Law Dictionary* (11th ed). Here, the arrangement was an alleged promise by the defendant to pay plaintiff money as expressed in text messages. Thus, taking plaintiff's factual allegations as true, the "loans" constitute "notes" and thus MCL 600.2939(3) applies, and MCL 600.2939(1) is inapplicable. The trial court did not err if it found plaintiff's claim unenforceable as a contract for gambling under MCL 600.2939(3)

Plaintiff also relies on two criminal statutes, asserting the defendant violated MCL 750.174(4) (embezzlement by agent) and MCL 750.249 (uttering and publishing). However, these statutes do not provide for a civil remedy or cause of action. See *Richardson v Allstate Ins Co*, 328 Mich App 468, 473; 938 NW2d 749 (2019). Therefore, the trial court did not err in granting defendant summary disposition as to civil claims founded on these criminal statutes.

Lastly, plaintiff argues that the trial court erred because it failed to review plaintiff's Exhibit F, documents regarding defendant's Bitcoin account. Specifically, plaintiff asserts, "The trial court flatly erred to review and investigate into the [d]efendant's Bitcoin digital address account and associated digital wallet to validate the [p]laintiff's claim…."

A trial court cannot consider other evidence in deciding a motion for summary disposition under MCR 2.116(C)(8). "Only the pleadings may be considered when the motion is based on subrule (C)(8)…." MCR 2.116(G)(5). It appears that plaintiff filed Exhibit F with his response to defendant's first set of interrogatories. Therefore, it is not part of the "pleadings" in this case. See MCR 2.110(A). Because the trial court could only consider the pleadings, it did not err in failing to review defendant's Bitcoin account documents.

## IV.  CONCLUSION

The trial court did not err in concluding plaintiff's claims are unenforceable as a matter of law.  The text messages submitted by plaintiff do not establish a valid contract between the parties. Defendant was properly granted summary disposition of plaintiff's claims.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra